**PEOPLE of the State of Colorado,**
**Plaintiff-Appellant,**

v.

**Mark A. NARANJO, Louis I. Silva, and**
**Phillip R. Chavarria,**
**Defendants-Appellees.**

**No. 84SA27.**

Supreme Court of Colorado,
En Banc.

Sept. 10, 1984.

Norman S. Early, Jr., Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Dist. Atty., Denver, for plaintiff-appellant.

Montano & Encinas, P.C., Alfred Duane Montano, Denver, for defendant-appellee Mark A. Naranjo.

Charles Trowbridge, Denver, for defendant-appellee Louis I. Silva.

Cyrus Callum, Denver, for defendant-appellee Phillip R. Chavarria.

ERICKSON, Chief Justice.

The prosecution has appealed from an order suppressing as evidence a television set seized from the back seat of an automobile which was occupied by burglary defendants, Mark A. Naranjo, Louis I. Silva, and Phillip R. Chavarria. We reverse.

## I.

At approximately 12:30 a.m. on August 14, 1983, officers of the Denver Police Department on routine patrol observed an automobile moving at an excessive rate of speed in a motel parking lot. The vehicle left the parking lot and entered the street, forcing Officer Wyche, the driver of the police car, to take evasive action to avoid a collision. After observing the automobile weaving from lane to lane, the officers stopped the vehicle.

Defendant Chavarria, a passenger in the vehicle, immediately jumped out of the car and informed the police officers that he was a hitchhiker and knew nothing about his companions' activities. At the officers' request, Chavarria returned to the vehicle, where he and the other passenger, defendant Silva, remained.

Upon encountering defendant Naranjo, who was the driver of the vehicle, Officer Wyche suspected that he had been driving under the influence of alcohol.[1] At the officer's request, Naranjo stepped out of the automobile. At that time, Officer Wyche noticed a television set in the back of the vehicle.[2]

Naranjo was given a roadside sobriety test. He failed the test and was arrested for driving under the influence of alcohol and placed in the police car. Officer Wyche then returned to the vehicle to examine the television set. Using a flashlight, he observed that the words "Center of Denver" had been engraved on the top of the television set. Officer Wyche recalled that the motel where the defendants

---

1. The vehicle was owned by defendant Silva's cousin, Walter Sasse. Mr. Sasse had given Silva permission to use the vehicle. Silva, in turn, had given Naranjo permission to drive.

2. The record is ambiguous as to whether Officer Wyche first saw the television set, or whether Officer Filby first observed it and called it to Officer Wyche's attention. No part of our analysis depends on who first discovered the television set.

were first seen was formerly named "Center of Denver." A radio-initiated investigation revealed that a television set had been stolen from the motel that evening. After learning of the theft, police officers arrested both Silva and Chavarria.

All three defendants were charged by information with second-degree burglary, section 18–4–203, 8 C.R.S. (1983 Supp.), and theft, section 18–4–401, 8 C.R.S. (1983 Supp.).[3] Each defendant pled not guilty to the charges, and each filed a motion to suppress the television set claiming that the police officers lacked probable cause to conduct the warrantless automobile search.[4] The trial court granted the individual defendant's motion to suppress the television set and stated:

> Upon the stopping of the vehicle, the defendant, Naranjo, was observed by the officer and he had suspicion to believe that, and reason to believe that he was under the influence. A roadside sobriety test was given to him, to this defendant. The defendant was placed under arrest. So probable cause did not exist at this point for any search of the vehicle. It was later that the vehicle was observed having in the back seat a nineteen-inch television with the name on it. The officer testified he flashed his flashlight in the automobile, observed the name on it, and seized the property—television. He did not have the right to do that. This was an illegal search and seizure, and as stated by the officer, was based on mere suspicion.

The prosecution does not contest the trial court's finding that the search was unsupported by probable cause. Instead, the prosecution asserts that under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and *People v. Henry*, 631 P.2d 1122 (Colo.1981), the search of the

vehicle was valid because it was incident to the lawful custodial arrest of one of the vehicle's occupants, defendant Naranjo.[5] The defendants, on the other hand, argue that the search incident to arrest doctrine is inapplicable on the facts of this case. They contend that the suppression of the television set was proper because the warrantless automobile search violated their Fourth Amendment rights.

## II.

As a threshold argument, the prosecution contends that defendants Silva and Chavarria lack "standing" to challenge the constitutionality of the search since they were merely passengers in the automobile driven by Naranjo.[6]

■ Before a defendant can challenge the constitutional legitimacy of a governmental search, he must demonstrate that he has a legitimate expectation of privacy in the areas searched or the items seized. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *People v. Suttles*, 685 P.2d 183 (Colo.1984); *People v. Savage*, 630 P.2d 1070 (Colo.1981); *People v. Little*, 198 Colo. 244, 598 P.2d 140 (1979). In making this "standing" determination, a court will consider, among other factors, whether an individual has a possessory or proprietary interest in the areas or items which are the subject of the search. *Rakas*, 439 U.S. at 148, 99 S.Ct. at 433. The record in this case reveals that defendants Silva and Chavarria do not share the same possessory interest in the automobile in question. Accordingly, their respective standing claims must be considered independently.

## A.

■ The record indicates that defendant Chavarria occupied the vehicle either as a

---

3. Naranjo was also charged with other motor vehicle violations which are not at issue here.

4. The defendants' motion to suppress any and all statements and observations by the police officers is not before us on appeal.

5. The prosecution expressly does not rely on either the "plain view exception" to the warrant or probable cause requirement for a search.

6. The prosecutor's reply brief does not dispute Naranjo's standing to challenge the legality of the search. Absent an opportunity for both parties to thoroughly brief this issue, we do not consider here whether a non-owner driver of an automobile has standing to challenge an automobile search when the person who has given him permission to drive is also present in the vehicle.

passenger or a hitchhiker. In either event, Chavarria does not have standing to challenge the search. The United States Supreme Court's decision in *Rakas* requires this conclusion. In *Rakas*, the Supreme Court held that passenger status alone does not establish a legitimate expectation of privacy in an automobile's passenger compartment. The Court, in *Rakas*, concluded that the passenger-defendants lacked standing to challenge the search since they had not asserted a possessory or proprietary interest in either the automobile or the items seized. *See also People v. Henry*, 631 P.2d 1122 (Colo.1981); *People v. Spies*, 200 Colo. 434, 615 P.2d 710 (1980).

Similar to the defendants in *Rakas*, Chavarria has asserted neither a property or possessory interest in the automobile, nor has he asserted an interest in the property seized. Accordingly, we conclude that Chavarria had no legitimate expectation of privacy in the automobile's interior at the time of the search. His motion for suppression of the television set must therefore be denied.

### B.

■ A different analysis must be used to evaluate the standing rights of defendant Silva. In contrast to Chavarria, Silva was more than just a passenger in the suspect vehicle. The record establishes that Walter Sasse, the owner of the vehicle, and Silva are cousins. Sasse had given Silva permission to use the car on the night in question. This bailment conferred upon Silva a possessory interest in the automobile at the time of the search. Given this possessory interest, Silva had a legitimate expectation of privacy in the vehicle at the time of search. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Ochs*, 595 F.2d 1247 (2d Cir.1979), *cert. denied*, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979), *cert. denied*, 451 U.S. 1016, 101 S.Ct. 3005, 69

L.Ed.2d 388 (1981); *United States v. Lopez*, 474 F.Supp. 943 (C.D.Cal.1979).

Because both Silva and Naranjo had standing to challenge the search, we must next determine whether the warrantless automobile search violated their Fourth Amendment rights.

### III.

■ The police officers' search of the automobile and their subsequent seizure of the television set must be analyzed under the automobile exception to the warrant requirement.[7] The United States Supreme Court has recognized that an automobile's mobility creates exigent circumstances which often make it impractical for a police officer to obtain a search warrant. Accordingly, police officers are permitted to search an automobile without a warrant when they have probable cause to believe the vehicle contains weapons or evidence of a crime. *People v. Velasquez*, 641 P.2d 943 (Colo.1982); *People v. Vincent*, 628 P.2d 107 (Colo.1981); *see also United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ The automobile exception applies only when a police officer has probable cause to believe the vehicle contains contraband. Probable cause to search an automobile can be the product of a lawful stop for a routine traffic violation. *Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980). Here, the police officers did not have probable cause to search the vehicle for stolen goods at the time the vehicle was initially stopped for traffic violations. However, the police officers subsequent observations and the radio investigation established reasonable grounds for the police officers to believe that the television set was stolen. The record indicates that when the police officer shined his

---

7. In their brief, the prosecution expressly disavows any reliance on the automobile exception to justify the search of the automobile and the seizure of the television set. Instead, the prosecution relies solely on the rule announced in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860,

69 L.Ed.2d 768 (1981) and *People v. Henry*, 631 P.2d 1122 (Colo.1981). However, the facts presented by the record require a different analysis. Therefore, we save for another day the search incident to arrest issue.

flashlight through the automobile's window, he observed the words "Center of Denver" engraved on the television set. He recalled that the defendants drove from the motel previously known as the "Center of Denver" when they nearly ran into the patrol car. A radio investigation revealed that a television set had in fact been stolen from the motel earlier that evening. *See Michigan v. Long*, — U.S. —, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *People v. Lewis*, 659 P.2d 676 (Colo.1983). Accordingly, the police officers had probable cause to seize the television set without a warrant.

The order of the trial court suppressing the television set is reversed as to all three defendants.