The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Simon Samuel EDWARDS, Jr.,
and Keith Randall Titsworth,
Defendants–Appellees.

No. 92SA185.

Supreme Court of Colorado,
En Banc.

Sept. 21, 1992.

John Suthers, Dist. Atty., David L. Geislinger, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Terrence T. McGannon, Colorado Springs, for defendant-appellee Simon Samuel Edwards, Jr.

Gresham & Gresham, Spencer A. Gresham, Colorado Springs, for defendant-appellee Keith Randall Titsworth.

Justice VOLLACK delivered the Opinion of the Court.

The district attorney brought this interlocutory appeal pursuant to Colorado Ap-

pellate Rule 4.1,[1] to challenge the district court's order granting the motions of defendants Simon Edwards (Edwards) and Keith Titsworth (Titsworth) to suppress evidence seized from Edwards' automobile. We reverse.

## I.

On December 20, 1991, at approximately 12:15 a.m., Officer Payton Patterson of the Colorado Springs Police Department was dispatched to a burglary in progress. While en route, dispatch broadcast that two black males had broken into an apartment and had already departed from the apartment complex by motor vehicle. Dispatch gave a description of the suspect vehicle and its license plate number, LER079.

When Officer Patterson arrived at the apartment complex, witnesses informed him that the alleged burglars had just left. D.W., the victim of the alleged burglary, and other witnesses reported the events of the burglary to Officer Patterson.

D.W. stated that T.P., a neighbor, came out of the back bedroom of D.W.'s apartment and stated that two black males, who had burglarized T.P.'s apartment two days earlier, were in the apartment complex parking lot. D.W. and her friends went out to the parking lot to confront the two men about the alleged burglary of T.P.'s apartment. D.W. asked the two men what they were doing at the apartment complex. A heated argument ensued.

S.B., a friend of D.W.'s who had been in the parking lot with D.W., told Officer Patterson that during the argument one of the men reached into the trunk of his vehicle and removed a black frame, automatic pistol which she thought was a nine millime-

ter. L.B., another friend of D.W.'s who had confronted the two men in the parking lot, told Officer Patterson that the two men were driving a white Buick Century. Officer Patterson then relayed this additional information about the gun and the description of the suspect vehicle over the police radio.[2]

At approximately 12:55 a.m., Officer David Rosenoff of the Colorado Springs Police Department was dispatched to 370 North Murray Boulevard, the address registered for license number LER079, to "contact" the suspect vehicle. Officer Rosenoff had been told that this vehicle may have been involved in a first degree burglary, that the license plate number was LER079, and that it was a tan Buick Century. He was also informed that two black males were involved in the alleged burglary, and that one of the suspects was "a large black male who had displayed a small caliber handgun."

Officer Rosenoff testified that, as he was preparing to leave the area, he saw a tan vehicle turn into the parking lot at 390 North Murray Boulevard. As he passed the vehicle, he looked over his shoulder and saw that the vehicle's license plate number was LER079, which matched the number of the suspect vehicle. Officer Rosenoff then pulled into the parking lot behind the vehicle. Officer Rosenoff observed that there were three occupants of the vehicle: two black males in the front seat and a woman in the back seat. He did not approach the vehicle until three other officers arrived on the scene. These other officers arrived within two minutes.

All the occupants were removed from the vehicle one at a time and the officers performed a pat-down search of each occu-

---

**1.** Colorado Appellate Rule 4.1 provides: "The state may file an interlocutory appeal in the supreme court from a ruling of a district court granting a motion under Crim.P. 41(e) ... made in advance of trial by the defendant ... to suppress evidence[.]" C.A.R. 4.1(a).

**2.** While not introduced at the suppression hearing, the record contains additional information about the events of the burglary. D.W. told Officer Patterson that after the argument in the parking lot, D.W. and her friends retreated to the apartment building. One of the men then

came to the door. He started banging on the door and screamed that he was "going to kill them." D.W. then went to a neighbor's apartment and had her neighbor call the police.

Upon returning to her own apartment, she found the living room window open and one of the men standing in her living room. She yelled for her friends, and the man went back out the window. D.W. then ran outside and wrote down the license plate number, LER079, of the suspect's vehicle.

pant. Edwards, the driver and owner of the car, was removed first. The officers then removed the woman from the back seat and, finally, Titsworth. The officers discovered nothing during this search. The three occupants were placed in the backseats of three separate police cruisers. Officer Rosenoff stated that he "assumed" the defendants were handcuffed, but was not sure. Officer Rosenoff testified that the suspects were not under arrest but were being detained while he investigated the situation.

At some point, between the time the occupants were removed from the car and shortly after they were placed in the police cruisers, Officer Rosenoff contacted Officer Patterson. Officer Patterson provided a further description of one of the suspects. Officer Rosenoff noted that this description matched that of Titsworth. Officer Rosenoff also asked Officer Patterson to confirm that a gun had been involved in the burglary. Officer Patterson responded in the affirmative.

Officer Rosenoff asked Edwards whether Edwards minded if he, Officer Rosenoff, looked through the car. Edwards did not answer the question. The officers then checked the vehicle for the weapon. They first searched the passenger compartment, but did not find a gun there. Officer Rosenoff then opened the trunk. During cross-examination, Officer Rosenoff explained the reason for his search of the trunk.

Q. That's what you say you were basically doing when you went into the trunk, to check for that?

A. I was looking for a gun.

Q. And you were doing that because in the event you released them, you didn't want them near any type of firearm, just for safety purposes?

A. No. I was looking for a gun because I was advised there had been a gun involved in this incident.

Officer Rosenoff did not find a gun in the trunk. He did find, however, a television, a remote control, and a cassette deck.

Officer Rosenoff returned to his police cruiser and contacted Officer Patterson. He informed Officer Patterson that he did not find a gun, but did find other items in the trunk. He asked Officer Patterson whether he knew anything about these items. Officer Patterson responded that they matched the items allegedly taken in the burglary of T.P.'s apartment two days earlier.

After Officer Patterson arrived on the scene, he discussed the situation with Officer Rosenoff and they decided that the two men were involved in the alleged burglary. At that time, the two men were placed under arrest. Edwards was subsequently charged with second degree burglary, conspiracy to commit second degree burglary, and theft. Titsworth, in addition to these crimes, was also charged with first degree burglary, crime of violence, and menacing.[3]

Both defendants, pursuant to Crim.P. 41(e), filed motions to suppress the evidence seized during the search of the vehicle for the gun.[4] They argued that the stop and warrantless search of the automobile violated their rights under article II, section 7, of the Colorado Constitution, and the Fourth and Fourteenth Amendments of the United States Constitution. The district attorney argued that, although the officers conducted a warrantless search, various exceptions to the warrant requirement were applicable to the facts of this case. The district attorney argued, alternatively, that exigent circumstances exist-

---

**3.** The third occupant of the car was taken to the police station, interviewed, and subsequently released.

**4.** From our review of the record, it appears that Titsworth did not have standing to challenge the validity of the search of the car. Edwards and his wife owned the car. Titsworth was Edwards' wife's brother. However, at the time of the search, he was simply a passenger in the car with no possessory or proprietary interest in the car or the goods seized. *See People v. Naranjo,*

686 P.2d 1343, 1346 (Colo.1984) (passenger defendants lack standing to challenge search of automobile when they have no property or possessory interest in automobile or items seized). Because we reverse the district court's suppression order, whether Titsworth has standing will not change the outcome of this case. The standing issue was not raised below or in this court and thus is not further addressed in this opinion.

ed; that the automobile exception applied; that the officers conducted an inventory search; and, finally, that the search was a search incident to an arrest.

The trial court concluded that Officer Rosenoff had reasonable grounds to stop the vehicle based on the description of the vehicle, the license plate of the vehicle, and the description of the occupants.[5] The trial court then analyzed whether the vehicle search subsequent to the stop was reasonable under the search incident to an arrest exception. The court stated that, while the officers could search the passenger compartment during a search incident to an arrest, it was unreasonable for the officers to extend the search into a locked trunk. The court also rejected the inventory search and exigent circumstances exceptions. Accordingly, the trial court ordered that the items seized from the trunk be suppressed.

After the court's order, the district attorney requested the trial court to address the automobile exception. The trial court, responded:

> Well, the fact that an auto can be searched, clearly an auto can be searched, but not a locked trunk, in my opinion, unless there is some good reason to search that locked trunk. I think there would have to be some real grounds.
>
> If he had been told specifically something that would indicate that there was something in the trunk that he should be looking for, I think that might be a possible exception to it, but that appears not to have been the case here.
>
> I understand that he knew there was a weapon, I understand that he could certainly look in the car and see if there was a weapon. But to take the keys, go into the trunk that is locked and got two people cuffed in the back of a cruiser appears to me to be beyond what is reasonable under those circumstances.

Later, the trial court stated:

> He was told there was a gun involved in the incident, apparently that was not at issue. Certainly as a result of that he could look in all the places that were available and open to him.
>
> The problem I have with it is going beyond that into the locked trunk.

The district attorney appealed the trial court's order, arguing that the police officer's conduct was reasonable under the automobile exception or, in the alternative, under the exigent circumstances exception. The defendants argue that the trial court properly analyzed and suppressed the evidence under the search incident to an arrest exception and that the automobile exception did not apply because the officer did not have probable cause to search the vehicle.

We reverse because our review of the totality of circumstances indicates that the warrantless search of Edwards' vehicle was reasonable under the automobile exception to the warrant requirement.

## II.

■ Article II, section 7, of the Colorado Constitution, and the Fourth Amendment of the United States Constitution through the Fourteenth Amendment, proscribe unreasonable state-initiated search and seizures. Warrantless searches are *per se* unreasonable. *See People v. Meyer*, 628 P.2d 103, 105 (Colo.1981) (quoting *Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980)). The general rule against warrantless searches is subject, however, to "a few specifically established and well-delineated exceptions." *Bannister*, 449 U.S. at 3, 101 S.Ct. at 43 (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). One such exception is the automobile exception, which permits police officers "to search an automobile without a warrant when they have probable cause to believe the vehicle contains weapons or other evidence of a crime." *People v. Naranjo*, 686 P.2d 1343, 1346 (Colo.1984).

■ In Colorado, a police officer may conduct a warrantless search of an automobile if: (1) there is probable cause to be-

---

**5.** Neither party contests this finding on appeal.

lieve that it contains evidence of a crime; and (2) the circumstances create a practical risk of the vehicle's unavailability if the search is postponed until a search warrant is obtained. *People v. Thiret*, 685 P.2d 193, 202 (Colo.1984); *Meyer*, 628 P.2d at 106; *cf. People v. Romero*, 767 P.2d 1225, 1227 (Colo.1989) (under Fourth Amendment of United States Constitution, "police may make warrantless search of an automobile on probable cause and without exigent circumstances").

### A.

"[P]robable cause is a flexible standard which is to be measured ... by a common-sense, nontechnical standard of reasonable cause to believe." *People v. Melgosa*, 753 P.2d 221, 225 (Colo.1988). "In the case of a search, probable cause means reasonable grounds to believe that contraband or evidence of criminal activity is located in the area to be searched." *Id.* "Due consideration should be given to a law enforcement officer's experience and training in determining the significance of his observations in the context of probable cause." *People v. Ball*, 639 P.2d 1078, 1082 (Colo.1982); *see also Melgosa*, 753 P.2d at 225 (quoting *Ball*, 639 P.2d at 1082).

■ In this case, Officer Rosenoff had probable cause to search the vehicle because he had "reasonable grounds to believe" that the vehicle contained "contraband or evidence of criminal activity." He was dispatched to the address where the vehicle was registered. He testified that he saw a tan vehicle that matched the description of the suspect vehicle broadcast over the police radio. After confirming that the license plate number on this vehicle matched the license number of the vehicle involved in the burglary, he pulled into the parking lot behind the vehicle and conducted an investigatory stop.

During the stop, Officer Rosenoff confirmed that the description of the man with the gun at the scene of the burglary fit the description of Titsworth, and confirmed that a weapon had been used in the alleged burglary. *See Naranjo*, 686 P.2d at 1346 (information obtained after stop may estab-lish reasonable grounds for search of vehicle).

Thus, at the time of the search, Officer Rosenoff knew that the vehicle itself matched the description and license number of the vehicle used in the burglary, that a gun had been used in the burglary, and that one of the occupants of the vehicle matched the description of the suspect who had used a gun during the burglary. Officer Rosenoff had reasonable grounds to believe that the suspect vehicle was involved in the crime and that it contained a weapon that was used during the alleged burglary. Under these circumstances, Officer Rosenoff had probable cause to search any part of the vehicle which might contain the gun involved in the alleged burglary, including the trunk. *See People v. Haggart*, 188 Colo. 164, 166–68, 533 P.2d 488, 490–91 (1975) (probable cause to search suspect vehicle for evidence of burglary allowed officers to search passenger compartment and trunk); *Dyson v. People*, 176 Colo. 45, 47, 488 P.2d 1096, 1097 (1971) (trunk of suspect vehicle used in burglary searched without a warrant where police had probable cause to search vehicle for evidence of crime).

### B.

■ Officer Rosenoff's testimony at the suppression hearing also supports our conclusion that the circumstances created a practical risk of the vehicle's unavailability.

In *People v. Thiret*, 685 P.2d 193 (Colo. 1984), the police seized and searched the defendant's vehicle at the defendant's home without a warrant. At the time the police seized the vehicle, the defendant was at the district attorney's office taking a polygraph examination. *Id.* at 202.

This court analyzed the seizure and search under the automobile exception. After finding probable cause, this court found the second prong satisfied because, although the defendant was away from home, the defendant

had nonetheless been alerted that his Datsun matched the description of the vehicle used the previous day in the kid-

napping. The car was still mobile and, if not seized, could have been driven off by the defendant upon his return or by someone acting under his direction prior to his return, with resulting loss to the police of both the vehicle and its contents.

*Id.*

In *People v. Melgosa,* 753 P.2d 221 (Colo. 1988), the police ordered the defendants out of their vehicle, frisked them for weapons, and then placed them in separate police cruisers "during the intervening police investigation at the scene." *Id.* at 226. This court found this police conduct proper "[i]n order to secure the safety of the officers at the scene." *Id.; see Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (upholding warrantless search of automobile in part on public protection rationale). After the defendants had been locked in the police cruisers, the officers returned to the defendants' vehicle and performed a protective search of the vehicle for weapons.

This court upheld the protective search of the vehicle even though the defendants were locked in the back of police cruisers at the time of the search. While *Melgosa* involved a protective search and not the automobile exception, it is relevant to the issue of whether a practical risk of unavailability exists in the present case.

The defendants in *Melgosa* argued that the fact that they were locked in the back of the police cruisers negated any claim that the search was conducted for police safety. This court noted, however, that neither of the defendants had been arrested at the time of the search, and if a decision were made to release them from police control, both defendants could have reentered their vehicle and gained access to any weapons. *Id.* at 226–27 n. 5.

In this case, the defendants' vehicle was still mobile. Officer Rosenoff testified that the defendants had not been arrested at the time of the search and that he was not sure whether the defendants would be returned to their vehicle. Thus, similarly to *Melgosa,* if a decision had been made to release the defendants, they could have reentered their vehicle and driven away with the vehicle, which would have resulted in a loss to the police of both the vehicle and its contents. The ready mobility of the vehicle, together with the other circumstances in this case, created a practical risk of the vehicle's unavailability.

We reverse the trial court's order suppressing the evidence seized in the trunk and remand the case for further proceedings.