**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Stephen P. HAUREY, David B. Haurey, and Sean P. McEnany, Defendants– Appellees.**

**No. 93SA36.**

Supreme Court of Colorado, En Banc.

Oct. 18, 1993.

Peter F. Michaelson, Dist. Atty., Timothy A. Meinert, Chief Deputy Dist. Atty., and Karen A. Baime, Deputy Dist. Atty., Eagle, for plaintiff-appellant.

Fahrenholtz & Riva, P.C., James E. Fahrenholtz, Avon, for defendant-appellee Stephen P. Haurey.

Hugh R. Warder, Glenwood Springs, for defendant-appellee Sean P. McEnany.

No appearance for defendant-appellee David B. Haurey.

Justice LOHR delivered the Opinion of the Court.

In this interlocutory appeal brought under C.A.R. 4.1, the People seek reversal of an order of the Eagle County District Court suppressing certain statements made by the defendants, Stephen P. Haurey, David B. Haurey, and Sean P. McEnany. The court ordered suppression based on the conclusions that the statements of Stephen Haurey were products of an illegal arrest and that the statements of the other two defendants resulted from custodial interrogation that was not preceded by *Miranda* warnings.[1] We reverse and remand to the district court for further proceedings.

## I.

The defendants were charged jointly in Eagle County District Court with unlawful use of a controlled substance, § 18–18–104, 8B C.R.S. (1986) (repealed and reenacted as § 18–18–404, 8B C.R.S. (1993 Supp.)), and unlawful possession of a controlled substance, § 18–18–105, 8B C.R.S. (1986) (repealed and reenacted as § 18–18–405 C.R.S. (1993 Supp.)). Each defendant moved to suppress all statements made by him, as well as other evidence. The district court held an evidentiary hearing, at the conclusion of which it suppressed all statements made by Stephen Haurey to police officers and all statements made by David Haurey and Sean McEnany in response to questions asked by police officers. The court ruled that statements of David Haurey and Sean McEnany that were not in response to such questions would not be suppressed. The People then brought this interlocutory appeal.

The charges against the defendants stemmed from events that occurred in Vail, Colorado, beginning at approximately 11:30 p.m. on August 21, 1992. Officer Tim Swanson of the Vail Police Department was on foot patrol when he observed a group of eight persons walking up a footpath towards the base of a chair lift on Vail Mountain. The officer testified, and the district court found, that this location was commonly used for smoking marijuana and ingesting cocaine. Officer Swanson called for backup assistance, then followed the group and watched as they formed a circle. Officer Swanson testified that as he approached the individuals he heard two sniffing noises. The officer testified that he knew that sniffing was the common way of ingesting cocaine, so he moved closer, turned on his flashlight, and shined it on the group. He testified that he saw a person, later identified as Sean McEnany,

---

1. In *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966), the United States Supreme Court recognized that the compelling pressures inherent in police custody "work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." In order to protect a person's Fifth Amendment privilege against self-incrimination, the Court set forth the requirement that a criminal suspect who is in police custody or otherwise deprived of his freedom of action in any significant way is entitled to an advisement of rights before being asked any questions. *Id.* at 444, 86 S.Ct. at 1612.

holding an orange colored vial to the nostril of another person, later identified as David Haurey, and simultaneously heard a third sniffing noise. Officer Swanson testified that he then identified himself as a police officer and said, "Do not move." According to Officer Swanson, Stephen Haurey—who was also in the group—advanced towards him and stopped only when Swanson directed Haurey several times to do so and pulled out his baton. During the course of these activities, three of the members of the group fled and were not apprehended. Two of the remaining members were released and never charged, leaving only the three co-defendants whose motions to suppress are at issue in this appeal.

Testimony was also presented by Officer Swanson, two backup police officers who arrived during the course of the events, and defendant Stephen Haurey concerning other matters that transpired that evening. Officer Swanson testified that he saw defendant McEnany throw a vial behind him. A vial was recovered at the scene. The defendants made a number of statements at various times and under various circumstances during their encounter with Officer Swanson and the backup officers.[2] The evidence with respect to the statements, particularly as to whether they were volunteered or elicited in response to police questioning, was not entirely consistent and in some instances was conflicting. The district court made no findings to resolve these uncertainties. The defendants were ultimately taken to the police station where for the first time McEnany was advised of his *Miranda* rights. Neither of the other defendants received such an advisement at any time during the evening.

After the presentation of evidence and arguments, the district court ruled from the bench. The court held that the defendants were under arrest when Officer Swanson first directed them not to move. With respect to David Haurey and Sean McEnany, the court held that there was

probable cause for arrest based on the scene that greeted Officer Swanson when he first shined his flashlight on the group. The court ordered that statements made by these two defendants in response to police questions must be suppressed but that statements that were not elicited by such questions were not subject to suppression. The court held, however, that Officer Swanson lacked probable cause for the arrest of Stephen Haurey. The court suppressed all statements made by Stephen Haurey because they were the products of the illegal arrest.

## II.

We review the district court's rulings, applying the pertinent legal principles to the evidence appearing in the record.

### A. Statements Made By David Haurey And Sean McEnany

■■■■ The issue with respect to the statements made by David Haurey and Sean McEnany is whether they were made as the products of custodial interrogation prior to advisement of their rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under *Miranda*, a person cannot be subjected to custodial police interrogation unless and until that person has been advised of certain constitutional rights and has waived those rights. *Id.* at 444–45, 86 S.Ct. at 1612; *People v. Hopkins*, 774 P.2d 849, 851 (Colo.1989). The suspect must be "adequately informed that he has a right not to say anything, that what he does say can be used against him in court, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires." *Hopkins*, 774 P.2d at 851. A statement obtained in violation of the *Miranda* requirements is not admissible as evidence in a criminal case. *Miranda*, 384 U.S. at 476, 86 S.Ct. at 1629;

2. The statements referred to at the hearing on the motions to suppress were made at the scene during a period of approximately twenty minutes from the time Officer Swanson first shined his flashlight on the group. The only exceptions

were statements made by Sean McEnany at the police station while he was being advised of his *Miranda* rights and in absence of any waiver of those rights.

*Jones v. People,* 711 P.2d 1270, 1275 (Colo. 1986); *People v. Aalbu,* 696 P.2d 796, 807 (Colo.1985). To determine whether a statement was obtained in a manner consistent with the dictates of *Miranda,* a court must resolve two issues: Was the person making the statement in custody at the time, and was the statement the product of police interrogation? *People v. Hamilton,* 831 P.2d 1326, 1330–31 (Colo.1992); *People v. Algien,* 180 Colo. 1, 6, 501 P.2d 468, 470 (1972).

■ "A person is 'in custody' not only when the person has been subjected to the constraints associated with a formal arrest, but also when a police interrogation is conducted under circumstances where the person interrogated has been deprived of his freedom of action in a significant way." *Hamilton,* 831 P.2d at 1330 (citing *Miranda,* 384 U.S. at 476–77, 86 S.Ct. at 1629); *accord People v. LaFrankie,* 858 P.2d 702, 705–06 (Colo.1993). The test for whether a person is in custody is an objective one: whether a reasonable person in the position of the suspect would have considered himself deprived of his freedom of action in any significant way. *Hamilton,* 831 P.2d at 1330; *Algien,* 180 Colo. at 7, 501 P.2d at 471. To determine a reasonable person's belief, a court must evaluate the totality of the circumstances under which the questioning occurred, including such factors as the following:

> The time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the

interrogation; and the defendant's verbal or nonverbal response to such directions.

*People v. Horn,* 790 P.2d 816, 818 (Colo. 1990) (quoting *Jones v. People,* 711 P.2d 1270, 1275–76 (Colo.1986)); *People v. Thiret,* 685 P.2d 193, 203 (Colo.1984). *See also* 1 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 6.6 at 108–09 (1991 Supp.) (discussing the application of custody standards in the context of investigatory stops).

■ Whether a person was "in custody" as a result of being deprived of his freedom of action in a significant way is a question of fact, which must be resolved by the trial court. *People v. Horn,* 790 P.2d at 818; *People v. Johnson,* 671 P.2d 958, 962 (Colo. 1983). The trial court's determination will be upheld on appeal if supported by competent evidence and based on application of the correct legal standard. *People v. Horn,* 790 P.2d at 818.

The district court determined that both Sean McEnany and David Haurey were under arrest from the time that Officer Swanson first shined his flashlight on them and directed them not to move. The court specifically rejected the prosecutor's argument that those two defendants were subjected only to an investigatory stop[3] at that time. The record, however, reflects that those defendants were not placed under arrest until later. Although the district court's ruling may contain the implication that the initial "arrest" was a detention sufficiently restrictive to meet the standards for custody for *Miranda* purposes, there is no indication that the district court considered those standards in relation to those two defendants. In order to resolve the uncertainties, it is necessary to remand the case to the district court with directions to determine the custody issue, applying proper standards.

---

**3.** " 'An investigatory stop is a limited form of intrusion that may be justified with less than probable cause' without violating article II, section 7, of the Colorado Constitution, or the fourth amendment of the United States Constitution." *People v. Lingo,* 806 P.2d 949, 952 (Colo.1991) (quoting *People v. Lagrutta,* 775 P.2d 576, 579 (Colo.1989)). *See also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971); § 16–3–103, 8A C.R.S. (1986). Neither Sean McEnany nor David Haurey has contested the propriety of the stop and detention that preceded his formal arrest.

*Miranda* does not prohibit the evidentiary use of unsolicited statements made by a person in custody prior to a proper advisement even though such statements are incriminating. Only statements made as a result of police interrogation, without the requisite advisement and waiver, are subject to suppression. Prohibited interrogation extends not only to direct questioning but also to its functional equivalent. *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *People v. Sharpless,* 807 P.2d 590, 591 (Colo.1991). That is, interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis,* 446 U.S. at 301, 100 S.Ct. at 1690. *Accord Sharpless,* 807 P.2d at 591; *People v. Lowe,* 200 Colo. 470, 474, 616 P.2d 118, 122 (1980).

The district court suppressed statements made by David Haurey and Sean McEnany "in response to questions." The court ruled, however, that "[s]tatements made by them that were not in response to questions—and there were some—are not suppressed." The court did not identify particular statements as falling in one category or the other, nor is the evidence so clear as to make such classification apparent from the record. As a result, it is necessary to remand the case to the district court so that it may apply the proper standards with respect to interrogation and may identify the statements suppressed as a result of the application of those standards.

In determining the admissibility of any statements made by David Haurey or Sean McEnany following a statement resulting from constitutionally impermissible custodial interrogation, the district court should consider the standards discussed in cases such as *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1984); *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963); and *People v. Briggs,* 709 P.2d 911, 916 and 916 n. 7 (Colo.1985). In the absence of findings and conclusions by the district court concerning the specific statements and the circumstances in which they were made, we elect not to address this matter in further detail.

### B. *Statements By Stephen Haurey*

The district court held that Stephen Haurey was under arrest when Officer Swanson first shined his flashlight on the group and directed them not to move. The district court also held that the officer lacked probable cause to arrest Stephen Haurey at that time and that therefore all ensuing statements by that defendant must be suppressed—impliedly as products of the illegal arrest.

The record does not support the district court's holding that Stephen Haurey was arrested when the group was first illuminated by the beam of the officer's flashlight and directed not to move. It was only later, after further investigation at the scene produced statements by Stephen Haurey, that he was arrested. Accordingly, it is not necessary to determine whether probable cause existed to believe that Stephen Haurey had committed or was committing a crime when Officer Swanson first shined his flashlight on the group. *See* § 16–3–102, 8A C.R.S. (1986) (peace officer may arrest a person when the officer has probable cause to believe that a criminal offense has been or is being committed by that person). Stephen Haurey has not challenged the propriety of the stop and detention that preceded his arrest. Accordingly, the proper analysis in determining whether his statements must be suppressed is whether they were made as a result of custodial interrogation.[4] This

---

4. The district court also offered this supplementary or alternative analysis in support of suppression of Stephen Haurey's statements:

   [I]f the defendant feels his liberty is restrained in any significant amount, he has a

reason under those circumstances to believe that he's under arrest. I believe under the circumstances of this case, Stephen Haurey had reason to believe that he was in fact under arrest. He was told not to move, he

analysis involves application of the same standards as previously discussed with respect to the other two defendants. The case must be remanded for application of the proper standards.

### C. *Physical Evidence*

Although the defendants' motions to suppress evidence encompassed physical evidence seized in the course of the officers' encounter with and subsequent arrest of the defendants, the district court did not suppress any physical evidence. Its order makes no mention of such evidence. Accordingly, it is unnecessary for us to address the propriety of the seizure of that evidence.

### III.

 The People also assert that the district court erred in sustaining an objection by defense counsel to a question asked by the prosecutor in cross examining defendant Stephen Haurey. C.A.R. 4.1, however, limits the types of rulings from which interlocutory appeals can be taken in criminal cases. *E.g., People v. Dailey*, 639 P.2d 1068, 1076 n. 8 (Colo.1982); *People v. Morgan*, 619 P.2d 64, 65 (Colo.1980). A ruling limiting the scope of cross-examination of a witness is not appealable under C.A.R. 4.1.[5] We therefore do not address the merits of the district court's ruling restricting the scope of cross examination.

### IV.

In summary, the district court must reassess its suppression orders in light of the standards set forth in this opinion. In doing so, the court must make sufficient findings of fact and conclusions of law to identify each of the statements at issue and to permit appellate review of its rulings with respect to whether such statements must be suppressed.

Order reversed and case remanded.

---

was told he was being detained, and thereafter they commenced to ask questions of him. Be it ID or otherwise, there should have been an advisement pursuant to the *Miranda* decision.

This analysis, if taken literally, is flawed because of the application of a subjective standard rather than an objective standard for determining custody and an ambiguity as to whether "arrest" was used simply to describe the degree of restraint constituting custody for the purpose of *Miranda* analysis. This ambiguity also exists in other parts of the district court's rulings. We believe that these uncertainties can best be resolved by remand with directions to apply proper standards, especially because remand is necessary for other purposes.

5. C.A.R. 4.1 provides, in relevant part:

The state may file an interlocutory appeal in the supreme court from a ruling of a district court granting a motion under Crim.P. 41(e) and (g) and Crim.P. 41.1(i) made in advance of trial by the defendant for return of property and to suppress evidence or granting a motion to suppress an extra-judicial confession or admission....