The **PEOPLE** of the State of Colorado,
Plaintiff–Appellant,

v.

Joseph **MOORE**, Jr., Defendant–Appellee.

No. 95SA43.

Supreme Court of Colorado,
En Banc.

June 30, 1995.

Stuart A. VanMeveren, Dist. Atty., Eighth
Judicial Dist., Loren B. Schall, Asst. Dist.
Atty., Clifford E. Riedel, Chief Deputy Dist.
Atty., Fort Collins, for plaintiff-appellant.

David F. Vela, Colorado State Public De-
fender, Andrew A. Saliman, Deputy State
Public Defender, Fort Collins, for defendant-
appellee.

Justice VOLLACK delivered the Opinion of the Court.

In this interlocutory appeal, the People seek review of an order of the Larimer County District Court (the district court), which suppressed certain evidence obtained from a search of an automobile in which the defendant, Joseph Moore, Jr. (Moore), was a passenger, and also suppressed a later inculpatory statement made by Moore to the police. We affirm the district court's suppression order as to the statement, and reverse the district court's suppression order as to the evidence found in the car and remand the case for further proceedings.

## I.

Moore was charged by information with the unlawful possession of a controlled substance, in violation of sections 18–18–203 and 18–18–405(2)(a)(I), 8B C.R.S. (1994 Supp.). Prior to trial, Moore filed a motion to suppress evidence of cocaine found in a wallet bearing his identification and also sought to suppress a later inculpatory statement that he made to the police. Moore argued that the evidence and statement were obtained in violation of his rights under the United States and Colorado Constitutions. The district court held a suppression hearing, and the following facts were established.

On the evening of October 13, 1994, several police officers and detectives with the City of Fort Collins Police Department executed a search warrant on Moore's apartment as part of an ongoing investigation of narcotics trafficking at the residence. Officer Daniel Murphy assisted with the search until he was directed by the detective in charge, Detective Todd Schneeberger, to locate Moore and his roommate, Ricky Hill (Hill). The police were aware, from surveillance of the apartment, that Moore and Hill had previously left their apartment in a black Volkswagen bug.

About fifteen minutes later, at approximately 10:45 p.m., Officer Murphy observed two men in a black Volkswagen bug. The driver of the vehicle twice failed to signal a right-hand turn, and Officer Murphy pulled the vehicle over. He stopped the vehicle in the parking lot of the apartment complex where the search was in progress, approximately fifty feet away from Moore's apartment.

As Officer Murphy approached the Volkswagen, both the driver and the passenger got out of the vehicle. The officer directed the passenger, whom he later identified as Moore, to stay by the car. Officer Murphy then identified the driver as Hill, conducted a computer check on his license, and told him that he would issue a warning for the traffic infraction. After giving Hill the warning, Officer Murphy asked Hill if he could talk with him about an ongoing narcotics investigation, and asked him if there were any illegal narcotics in the vehicle. Hill replied that there were no drugs in the vehicle but that he had a marijuana cigarette, and he proceeded to produce it from behind his ear.

Officer Murphy then requested and obtained Hill's consent to search the vehicle. According to Officer Murphy's testimony, Hill gave consent willingly and was cooperative. Officer Murphy searched the interior of the vehicle and found a black wallet under the passenger seat.

When he looked inside the wallet, Officer Murphy saw two packages of a substance which he suspected was cocaine.[1] He also found a driver's license with Moore's name on it inside the wallet. After leaving the vehicle, Officer Murphy handed the wallet to an assisting officer, and asked Hill if the wallet was his. Hill replied that it was not.

Meanwhile, Moore had left the area and had walked across the parking lot to his apartment, apparently accompanied by another police officer. Moore entered his apartment while the police were still executing the search warrant. Detective Schneeberger testified that he showed Moore the search warrant, advised Moore that he was not in custody, and told him that he was free to leave at any time. Detective Schneeberger told Moore that if he did not leave, he should sit on the couch in the living room, which was about ten feet away from the front door of the apartment. Moore was not hand-

---

1. That suspicion was confirmed after a field test came back presumptive for cocaine.

cuffed, and there were no officers blocking his exit.[2]

Approximately twenty or thirty minutes after Moore first entered his apartment, Detective Schneeberger received the wallet from another officer, looked inside, and saw the driver's license with Moore's name on it along with two plastic baggies of a white powder which he suspected was cocaine. Detective Schneeberger then turned to Moore and asked him what he would find if he looked inside the wallet. Moore replied, "Three eight-balls."[3] Moore was not advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to making the statement. After the police concluded the search of Moore's residence, they arrested him.

Moore testified at the suppression hearing on the limited issue of whether he was in custody when he was in his apartment. Moore said that, when he initially entered the apartment, approximately three of the officers present drew their guns on him. Moore said that he put his hands in the air and when he then indicated to the officers that there was another officer with him, the officers holstered their weapons. Moore admitted that the police showed him a copy of the search warrant and told him that he was not under arrest, but testified that he did not feel he was free to leave the apartment because of all the officers standing there with their guns.

The district court took the matter under advisement at the conclusion of the suppression hearing. The district court, by written order, granted Moore's motion to suppress evidence of the contents of the wallet as well as Moore's statement to the police. The district court reasoned that, although the stop of the vehicle was proper, it was unreasonable for Officer Murphy to believe that

Hill's consent to search the automobile included consent to the search of the wallet found underneath the passenger seat, particularly since the officer knew that Hill's wallet was in Hill's possession at the time. The district court also found that Moore had not abandoned his wallet because he had no reason to know that the car would be searched when he exited the vehicle. Furthermore, the district court rejected the People's argument that the search of the wallet was justified under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), since in that case the search was conducted incident to an arrest. The district court did not specifically hold that Officer Murphy lacked probable cause to search the car or the wallet, but nonetheless ruled that the search was unreasonable.

Regarding Moore's statement to the police while in the apartment, the district court held that the statement was a product of custodial interrogation, since a reasonable person in Moore's position would not have felt free to leave the officers' presence. The district court suppressed the statement on two grounds: because it was made without a *Miranda* warning, and because it was the fruit of the unreasonable search of the wallet.

The People appeal the district court's ruling. We affirm the suppression order as to the statement, and reverse the district court's suppression order as to the contents of the wallet found in the car and remand the case for further proceedings.

## II.

■ We first address the district court's suppression of evidence contained in the wallet. As justification for Officer Murphy's warrantless search of the Volkswagen bug and the wallet, the People argue that the search was supported by probable cause.[4]

---

**2.** Detective Schneeberger said that a woman was present in the apartment when the police arrived to execute the search warrant. The woman was advised that she was not under arrest, and that she was free to leave at any time. She did in fact leave after fifteen or twenty minutes.

**3.** Detective Schneeberger testified that an "eight-ball" is a slang term for an eighth of an ounce of cocaine.

**4.** The People justify the warrantless search of the vehicle and wallet on several grounds: (1) Moore lacked standing to assert that the search was unreasonable; (2) Hill had authority to consent to the search of the vehicle and the wallet, and he voluntarily gave consent; (3) Officer Murphy acted on a reasonable, good-faith belief that Hill gave consent to search the vehicle and the wallet; (4) Moore abandoned the wallet; and (5) Officer Murphy had probable cause to search.

We agree. We find that Officer Murphy's search of the car and the wallet found in the car was based on probable cause to believe that the vehicle contained contraband, and that the district court therefore erred in suppressing evidence of the contents of the wallet.

The United States and the Colorado Constitutions provide that citizens have a right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7; *People v. Hopkins*, 870 P.2d 478, 480 (Colo.1994). Generally speaking, warrantless searches violate these guarantees because they are presumptively unreasonable.[5] *People v. Carper*, 876 P.2d 582, 584 (Colo.1994). However, there are exceptions to the warrant requirement. *People v. Edwards*, 836 P.2d 468, 471 (Colo.1992). Among these exceptions is the automobile exception, which allows the police to conduct a warrantless search of an automobile if they have probable cause to believe that the automobile contains evidence of a crime. *People v. McMillon*, 892 P.2d 879, 882 (Colo.1995); *Edwards*, 836 P.2d at 471. The police have probable cause to search if they have a reasonable basis for believing that the area being searched contains contraband or evidence of criminal activity. *McMillon*, 892 P.2d at 882.

Under the automobile exception, as long as the police have legitimately stopped an automobile and have probable cause to search it, they may also search containers within the automobile that might contain the object of their search. *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982); *McMillon*, 892 P.2d at 883. We recently applied this rule to facts similar to those presented by this case. In *McMillon*, a police officer lawfully stopped an automobile for a traffic offense, and, after determining that the driver was wanted on at least one outstanding arrest warrant for possession of drug paraphernalia, arrested the driver. The officer returned to the car and asked McMillon, a passenger, to get out of the automobile. As McMillon did so, the officer saw a syringe near the front seat. The officer then proceeded to search the interior of the automobile, and also searched a purse that was lying on the passenger seat. Inside the purse, the officer found baggies of cocaine and identification belonging to McMillon, which was the basis for a later charge against her.

Although the trial court denied McMillon's motion to suppress, the court of appeals held that the evidence should have been suppressed. We reversed, holding that, because the officer had probable cause to search the automobile for contraband, he could properly conduct a warrantless search of the passenger compartment of the automobile, *including* the purse. *McMillon*, 892 P.2d at 883.[6] We also specifically held that the search of the purse was proper irrespective of whether the police officer knew or should have known to whom the container belonged. *Id.*

From our review of the record, we find that Officer Murphy had probable cause to search the automobile. After he legitimately stopped the vehicle for a traffic offense and gave Hill a warning,[7] he asked Hill if there were any drugs in the car. Hill replied that there were not, but produced a marijuana cigarette from behind his ear. This factor, along with Officer Murphy's knowledge that the occupants of the car were

---

5. Of course, a defendant's rights under the Fourth Amendment are not even implicated unless he can establish that he "was himself the 'victim' of the search or seizure." *People v. Juarez*, 770 P.2d 1286, 1289 (Colo.1989) (quoting *Rakas v. Illinois*, 439 U.S. 128, 132, 99 S.Ct. 421, 424, 58 L.Ed.2d 387 (1978)); *People v. Carper*, 876 P.2d 582, 584 (Colo.1994). An individual cannot challenge a warrantless search and seizure as improper if there is no reasonable expectation of privacy in the area searched or the items seized. *Juarez*, 770 P.2d at 1288–89.

Although we agree with the People that Moore had no reasonable expectation of privacy in the wallet, we base our decision instead on our conclusion that Officer Murphy's warrantless search and seizure was proper.

6. Our alternative holding was that the search of the purse was justified as a search incident to the arrest of the driver under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *McMillon*, 892 P.2d at 884.

7. Moore does not argue that Officer Murphy's initial stop of the vehicle was improper, and we agree with the district court that it was not.

suspected of drug activity, gave him a reasonable basis for believing that contraband or evidence of a crime would be found in the Volkswagen bug. As we found in *McMillon*, once Officer Murphy had probable cause to search the automobile, he could also properly search containers within the automobile that could contain the object of his search. Drug evidence can readily be concealed in small containers, as it was in this case, and Officer Murphy was entirely justified in searching the wallet for such evidence. Since Officer Murphy's warrantless search of the vehicle and the wallet found in the vehicle was supported by probable cause, we find that the district court erred in suppressing evidence of the contents of the wallet.[8]

### III.

■ The next issue we consider is whether the district court also erred in suppressing evidence of a statement made by Moore in his apartment, in which he told the police that they would find "three eight-balls" if they looked in the wallet. The district court suppressed the statement on the ground that it was made as a result of custodial interrogation without the benefit of a *Miranda* warning.[9]

The People seek reversal of the suppression order, arguing that the police were not required to warn Moore of his *Miranda* rights because Moore was not in custody when he made the statement.[10] We disagree. From our review of the record, we find that the district court's conclusion that Moore was in custody is supported by the

evidence. Accordingly, we affirm the district court's order suppressing the statement.

■ Under *Miranda*, before an individual can be questioned while in police custody, he must first be advised of certain rights. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612; *People v. Jordan*, 891 P.2d 1010, 1014 (Colo.1995). If the police fail to advise the suspect of his rights, any statements that he makes as a result of the custodial interrogation must generally be suppressed in a criminal case against him. *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630; *Jordan*, 891 P.2d at 1014.

■ The warnings incorporated in the *Miranda* advisement are necessary only in the situation of a custodial interrogation. *Stansbury v. California*, —— U.S. ——, ——–——, 114 S.Ct. 1526, 1528–29, 128 L.Ed.2d 293 (1994); *Oregon v. Elstad*, 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985); *People v. Dracon*, 884 P.2d 712, 716 (Colo.1994). The questioning is custodial if a reasonable person in the same position would consider himself deprived of his freedom of action in a significant manner. *Stansbury*, —— U.S. at ——, 114 S.Ct. at 1528; *Dracon*, 884 P.2d at 716–17; *People v. Haurey*, 859 P.2d 889, 893 (Colo.1993). To resolve this issue, the court must consider the totality of the circumstances surrounding the interrogation. *Dracon*, 884 P.2d at 717; *Haurey*, 859 P.2d at 893 (both cases listing a number of factors to be considered). We will not disturb the district court's findings on appeal if such findings are supported by competent evidence in the record and the trial

---

**8.** The evidence also suggests that the warrantless search of the automobile and wallet was proper because Hill voluntarily consented to the search. *See People v. Olivas*, 859 P.2d 211, 214 (Colo. 1993) (noting that consent eliminates the need for a search warrant). In this respect, we disagree with the district court that Officer Murphy could not have reasonably believed that Hill's consent to the search of the automobile extended to the search of the wallet, which was found under the passenger seat of the vehicle. Hill knew when he gave consent that the officer was looking for evidence of drugs, and the record is devoid of evidence that Hill limited the scope of the consent so as not to include the search of the wallet. Since it was Hill's car, Officer Moore properly assumed that he had permission to search the vehicle, including any containers

therein. *See Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991) (holding that it was objectively reasonable for the officer to conclude that consent to search the car for narcotics included consent to search containers within the car which could contain drugs).

**9.** The district court also suppressed the statement on the alternative ground that it was a fruit of the illegal search of the automobile and wallet. Since we have concluded that the search was proper, we need not address this issue.

**10.** It is undisputed that Moore was not advised of his *Miranda* rights prior to making the statement.

court applied the correct legal standard. *Jordan*, 891 P.2d at 1015; *People v. Breidenbach*, 875 P.2d 879, 885 (Colo.1994).

The trial court made detailed findings on the question of custody and concluded that the defendant's statement was made during a custodial interrogation:

[D]efendant was escorted by a police officer to his apartment which was closeby [sic]. There were six officers in the apartment. The officers were not in uniform but some had jackets with "police" written on them. As defendant entered the apartment approximately three law enforcement officers drew their guns and pointed them at defendant. At least two of the officers who drew their guns got down on one knee. Defendant raised his hands in the air. Defendant said something to the effect that a police officer was behind him. The officers then holstered their weapons.

Officer Schneeberger, a special investigations unit officer for the Fort Collins Police Department, was inside the apartment. He was in charge of the investigation. Officer Schneeberger told defendant that he was not under arrest and that he could leave at anytime. Defendant was not handcuffed. Officer Schneeberger testified that he told defendant to sit on the recliner if defendant was going to stay. Defendant testified that he asked if he could take his coat off and sit down. Nevertheless, defendant sat on the recliner during the rest of the search. A police officer was standing within five feet of defendant while he was in the apartment. Officer Schneeberger explained why the officers where [sic] in defendant's apartment and showed defendant a copy of the search warrant. This conversation took place in the living room which was approximately ten feet from the door.

Officer Schneeberger was then given the wallet. Officer Schneeberger opened it up and saw two plastic bags of cocaine. Officer Schneeberger asked defendant what he was going to find in the wallet. Defendant said "three eight balls." Defendant was not mirandized prior to this statement or at anytime during the search. The apartment was searched for another twenty minutes. During that time, defendant never left or requested to leave the apartment. Officer Schneeberger asked defendant who his source was and when defendant refused to answer, defendant was arrested.

. . . .

... Custody depends on whether a reasonable person in the defendant's circumstances would have believed that he was free to leave the officer's presence. The Court is to look at the totality of the circumstances surrounding the interrogation, including: "the time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions."

Here, defendant was escorted to his apartment where a search was being conducted. As he entered his apartment, three officers had their guns drawn and pointing at him. It is only when he said that an officer is behind him that the three holstered their guns. He was with three other officers in the apartment who were conducting the search. He asked whether he could take his coat off. He was permitted to do so. He either asked or was told to sit on the recliner. Defendant's movement was limited to sitting on the recliner during the search and questioning. An officer was five feet from defendant while he sat on the recliner. In addition, a friend of defendant's was in the bathroom with an officer. Once defendant refused to cooperate with Officer Schneeberger, he was arrested. Based on these facts, a reasonable person in defendant's circumstances would have believed that he was not free to leave the officer's presence.

Therefore, a custodial interrogation took place.

(Citations omitted.)

Based on our review of the district court's ruling, we conclude that the totality of the facts found by the trial court support its conclusion that a reasonable person in Moore's position would have considered himself to be in custody when he was questioned by the police officers. As the district court found, when Moore entered his apartment, he was greeted by approximately six armed officers who were present in his apartment. Moore testified that he was shocked by this sight. Although Moore was told that he was not under arrest, Moore stated that none of the officers indicated to him that he could leave his apartment. Moore, during the thirty-five minute search, remained on his couch with an officer standing right next to him. Moore testified that he felt as if the officer "was watchin' to see if I was going to make a move or somethin'." Based upon the evidence, we hold that the trial court's order suppressing the defendant's inculpatory statement is adequately supported by competent evidence in the record.

## IV.

In summary, we find that the district court erred in suppressing evidence of the contents of the wallet. Since Officer Murphy had probable cause to search the vehicle, he could also properly search containers therein, including the wallet. We also conclude that the district court's finding that Moore was in custody when he made his statement is supported by the record; the district court therefore properly suppressed his statement as being made without the benefit of a *Miranda* warning. Accordingly, we affirm the suppression order as to the statement, and reverse the district court's suppression order as to the contents of the wallet found in the car and remand the case for further proceedings.

ROVIRA, C.J., concurs in part and dissents in part, and MULLARKEY, J., joins in the concurrence and dissent.

Chief Justice ROVIRA concurring in part and dissenting in part:

I agree with part II of the majority opinion which holds that the trial court erred by suppressing evidence of the contents of the wallet found in the vehicle in which Moore was a passenger. However, I disagree with the majority's conclusion that the defendant was in custody when he was asked and answered one question by police officers in his apartment. The record does not support that conclusion under any test and certainly not the totality of circumstances test adopted by the majority.

It is well established that a valid custodial interrogation requires that a person be given certain advisements. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If such advisements are not given to a person who is in custody, any statements made as a result of the interrogation must generally be suppressed. *Id.* at 479, 86 S.Ct. at 1630.

The determination of whether Moore was in custody is not altered by the fact that he testified he did not feel he was free to leave. The pertinent inquiry is not based on his subjective mental state, but rather whether a reasonable person in his situation would feel free to leave. *Stansbury*, —— U.S. ——, ——, 114 S.Ct. 1526, 1528 (1994); *People v. Hamilton*, 831 P.2d 1326, 1330 (Colo.1992). This inquiry requires a consideration of the totality of the circumstances surrounding the interrogation. *People v. Dracon*, 884 P.2d 712, 717 (Colo.1994); *People v. Haurey*, 859 P.2d 889, 893 (Colo.1993).

Moore was not hand-cuffed nor was he restrained in any manner when he left Hill and Officer Murphy and returned to his apartment. Although some of the officers in the apartment apparently drew their weapons upon Moore's entry, they immediately re-holstered them upon determining that there was no threat. The majority's recognition that Moore was shocked by this display is nothing more than a subjective indicia which adds nothing to the inquiry of custody.

Furthermore, it is undisputed that after Moore entered the apartment, Detective Schneeberger showed him a copy of the

search warrant, and told Moore that he was not under arrest and was free to leave at any time, but that if Moore chose to remain, "[he] need[ed] to sit on the couch."[1] This directive was presumably given to Moore in order to ensure the safety of the officers who were conducting the search and to prevent potential destruction of evidence on the premises.

Rather than leaving the apartment, the defendant testified that he took off his coat, sat on the couch, put his feet up on a table and watched television for the duration of the search. Moore was not hand-cuffed or restrained in any manner nor was the front door blocked during the thirty-five minutes it took to complete the search.

These undisputed facts are far removed from the types of restraint which this court has recognized as necessary for a finding of custody. *See, e.g., Dracon,* 884 P.2d 712 (Colo.1994) (defendant was in custody where taken to police station, questioned for approximately four hours and detained for over seven hours without being told that she was free to leave); *People v. Breidenbach,* 875 P.2d 879 (Colo.1994) (custodial interrogation where defendant was physically restrained and questioned at gunpoint).

Here, the facts lead to only one conclusion, that a reasonable person in Moore's circumstances would have felt free to leave. Indeed, there was a woman present in the apartment during the search who was also advised that she was not under arrest and could leave at any time. Fifteen minutes later, she left the apartment without any difficulty.

Moore remained in his apartment during the search of his own free will and volition. He was not in custody when he made the inculpatory statement and suppression by the trial court was in error. This court compounds the error by affirming that decision. I dissent to part III of the majority opinion.

I am authorized to say that Justice MULLARKEY joins in this dissent.

---

**1.** The majority recognizes that Moore stated that "none of the officers indicated to him that he could leave his apartment." Maj. op. at 73.

However, the trial court found that Officer Schneeberger did in fact tell Moore that he could leave at any time.