# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3418

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Lop Bounmy, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: March 17, 2005
Filed: April 14, 2005

_____

Before MURPHY, HEANEY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Lop Bounmy (Lop) was convicted by a jury of 1) conspiracy to possess with intent to distribute or to distribute 50 grams or more of a mixture or substance containing methamphetamine, and 2) distribution and aiding and abetting the distribution of 50 grams of a mixture or substance containing methamphetamine. The district court[1] sentenced him to 70 months on each count, to run concurrently. Lop appeals, arguing that the evidence was insufficient to support the jury verdict. We affirm.

_____

[1]The Honorable John B. Jones, United States District Judge for the District of South Dakota.

Darcy Sieve was arrested at a casino in Sioux Falls, South Dakota after she was caught passing counterfeit bills on August 3, 2003. She initially told the officers that she had come to town for a friend to pick up money for a car. Later she admitted that she had come from Worthington, Minnesota with a juvenile to deliver three ounces of methamphetamine to Bounmy Bounmy (Bounmy).[2] She and the juvenile subsequently went with Bounmy to a casino to meet Lop. After Lop placed a call to Peter Yang, the four drove to Yang's home. There Bounmy gave the methamphetamine to Yang, and he paid with what were later discovered to be counterfeit bills.

Some time after Sieve's arrest, Lop and Yang were both indicted for conspiring to possess with intent to distribute and to distribute 50 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and for distributing and aiding and abetting the distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Lop went to trial before a jury, but Yang absconded.

Bounmy testified at the trial that Lop had asked her to call Sieve to set up a purchase of methamphetamine. When Sieve and the juvenile arrived at her home in Sioux Falls, Bounmy called Lop at the casino where he was waiting. Lop told Bounmy to come to the casino with Sieve, and they and the juvenile drove there in Sieve's car. After they arrived at the casino, Lop called Yang. The four went to Yang's house, and Sieve gave Bounmy a black sock containing three ounces of methamphetamine. Lop and Bounmy went into the house where Bounmy handed the black sock over to Yang. Yang looked inside the sock and then handed money to Bounmy which she placed in her pocket. Lop told her to count it. She took it out, counted $2,200, and then put the money back into her pocket. Lop remained at

_____

[2]Bounmy Bounmy and Lop Bounmy are not directly related.

Yang's house while the others returned to Bounmy's where they discovered that Yang had paid with counterfeit money.

Bounmy told the jury in addition that she had been arrested for her role in the drug deal, that she had committed another drug crime after her arrest, and that she had pled guilty to both drug felonies. She explained that under her plea agreement with the government her sentence could be reduced if she cooperated and told the truth.

Sieve also testified for the prosecution. She testified that she had received a phone call from Bounmy on August 3, 2003, telling her that someone in Sioux Falls would pay $1,900 for three ounces of methamphetamine. Sieve and the juvenile then drove from Worthington, Minnesota to Sioux Falls with three ounces of methamphetamine. The drugs were divided into three zip lock bags, each containing one ounce. Sieve placed the zip lock bags in a black nylon stocking. After arriving at Bounmy's home, Sieve drove with her and the juvenile to the casino to meet Lop. Sieve heard Lop tell Yang on the telephone that "we have to do it right now because otherwise she is going to go and she is going to take it."

The group of four left the casino, and Lop gave directions to Yang's house. When they arrived, Sieve and the juvenile waited in the car while Lop and Bounmy entered the house. Bounmy later came out with money from the sale, and Sieve put it in her purse. They then returned to Bounmy's house where they discovered that Yang had paid with counterfeit money. After an unsuccessful attempt to locate Lop and Yang, Sieve went to the casino where she was caught passing counterfeit bills.

Sieve testified further that after she was arrested, she told the police she had traveled to Sioux Falls for a friend in order to pick up money for a car and had obtained the money at a house which she visited with Bounmy. She also showed them where Yang and Bounmy lived. At a later meeting, she told law enforcement about the drug deal involving Lop. Sieve told the jury in addition that she had pled

-3-

guilty to the drug charge in this case and that she had a total of three drug felonies on her record.

Two other witnesses testified for the government: a police officer who was present when Sieve was arrested and a federal agent who later interviewed Sieve and Bounmy. The police officer indicated that Sieve had pointed out Bounmy's house and another in Sioux Falls and that she had $800 in valid currency and thirteen counterfeit $100 bills in her possession at the time of her arrest. He stated that they recovered three more counterfeit $100 bills from the casino where she was arrested. The federal agent testified that Sieve admitted her involvement in the drug transaction and that she identified Lop in a photo lineup as another participant. The agent testified further that Bounmy had also identified Lop in a photo lineup. Both photo lineups were introduced into evidence.

The jury convicted Lop on both counts charged in the indictment, finding beyond a reasonable doubt that at least 50 grams of a mixture or substance containing methamphetamine were involved in each count. The court imposed concurrent sentences of 70 months. Lop appeals, arguing that the evidence presented to the jury was insufficient to support his convictions.

Since Lop did not move for acquittal at the close of the government's case we review the sufficiency of the evidence for plain error. United States v. McCaghren, 666 F.2d 1227, 1231-32 (8th Cir. 1981). Our sufficiency review is limited in that the evidence is viewed in the light most favorable to the government, conflicts are resolved in the government's favor, and all reasonable inferences are accepted in support of the verdict. United States v. Hamilton, 332 F.3d 1144, 1148-49 (8th Cir. 2003). The verdict will be upheld if the government produced sufficient evidence for a jury to find the elements of the offense beyond a reasonable doubt. Id. at 1149.

Lop argues that the evidence was insufficient for the jury to find him guilty of the crimes charged. He contends that even though this court has held that uncorroborated accomplice testimony is sufficient to sustain a conviction, United States v. Crenshaw, 359 F.3d 977 (8th Cir. 2004), there was no physical evidence in this case to tie him to a crime or even to prove that a crime had been committed. He contends that the primary witnesses (Sieve and Bounmy) were convicted felons who had a motive to lie because they had been charged with substantial drug offenses and needed to obtain leniency. The other two witnesses added little to the government's case he says. Lop also points out that Sieve changed her story during the course of the investigation and argues that there is no evidence that he knew the black sock contained methamphetamine. In support of his position Lop cites United States v. Waterman, 704 F.2d 1014, 1017-18 (8th Cir. 1983), a case in which the uncorroborated testimony of a coconspirator was found insufficient to uphold a jury verdict. (conviction overturned where there was no evidence of arson other than coconspirator's uncorroborated and marginally probative testimony).

The government argues that the evidence is sufficient to support Lop's convictions because it shows that he organized the drug deal, directed it from the beginning, and was involved until the crime was complete. It contends that even though Lop framed the issue on appeal as attacking the sufficiency of the evidence, his argument really is an attack on witness credibility. The government argues that this case is very similar to United States v. Dabney, 367 F.3d 1040 (8th Cir. 2004), a case in which this court upheld a conspiracy conviction based primarily upon the testimony of drug dealers and users.

Questions involving the credibility of witnesses are for the jury to resolve, Dabney, 367 F.3d at 1043, and the "uncorroborated testimony of an accomplice is sufficient to sustain a conviction if it is not otherwise incredible or unsubstantial on its face." Crenshaw, 359 F.3d at 988-89. An accomplice's testimony is not discredited simply because the witness may benefit from inculpating the accused, and it is the

-5-

jury's responsibility to decide whether a witness is telling the truth despite incentives to lie. Id. at 988.

The jury in this case was aware that Sieve and Bounmy had felony drug convictions, that they had pled guilty to charges stemming from this offense, and that Sieve had initially lied to the police. The trial testimony of Sieve and Bounmy was consistent, however, and they both implicated Lop as the organizer of the drug deal. Both testified that Lop spoke with Yang to set up the meeting at Yang's house. Bounmy also testified that Lop asked her to call Sieve to arrange the transaction, that he was present when she gave the methamphetamine to Yang, and that he told her to count the money she received in exchange. Both Sieve and Bounmy indicated to a federal agent investigating the case that Lop was involved in the drug transaction, and other evidence corroborated their stories. The police officer's testimony showed that Sieve was arrested for passing counterfeit bills at the casino and had thirteen counterfeit $100 bills and $800 in valid currency in her possession. He also testified that during Sieve's interview at the police station, she described two residences in Sioux Falls and then pointed them out for the officers.

The government can prove the existence of a conspiracy with direct or circumstantial evidence, Dabney, 367 F.3d at 1042, and we conclude that the government presented ample evidence for the jury to find Lop guilty beyond a reasonable doubt on both counts. Thus, we find no error.

Accordingly, the judgment of the district court is affirmed.

_____

-6-