# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3772

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Brent Arthur Moe, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 10, 2008
Filed: August 4, 2008

_____

Before LOKEN, Chief Judge, EBEL and COLLOTON, Circuit Judges.[*]

_____

EBEL, Circuit Judge.

Defendant-Appellant Brent Moe appeals his two-count conviction for aiding and abetting the robbery of a credit union. Moe specifically contends that the district court[1] erred when it considered and denied his requests for a

_____

[*]The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

[1] The Honorable Daniel L. Hovland, Chief Judge, United States District
(continued...)

continuance outside Moe's presence. Moe also asserts that the evidence presented at trial was insufficient to support the guilty verdicts.[2] We disagree. Moe's absence did not prevent a fair and just hearing on the continuance and in light of all the circumstances, we cannot conclude that the district court abused its discretion by denying Moe's request for a continuance. In addition, there is no doubt that the evidence presented at trial supports the two guilty verdicts. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we therefore AFFIRM.

## I.

In January 2007, both Brent Moe ("Moe") and Justin Rieniets ("Rieniets") were facing financial difficulties. In an attempt to relieve some of these difficulties, they discussed robbing a nearby credit union in Ray, North Dakota. While fishing and drinking at Moe's icehouse in Tioga, North Dakota, the two men formulated a plan for the robbery. They decided that Moe would lend Rieniets his snowmobile and handgun for the robbery. They also decided that Rieniets would drive the snowmobile from Tioga to Ray via an indirect route, rob the credit union, and then return. They pegged Tuesday, January 23, 2007 for the robbery.

On Monday, January 22, 2007, Rieniets and Moe met and Rieniets took possession of the snowmobile and the handgun. Rieniets planned to execute

---

[1](...continued)
Court for the District of North Dakota.

[2] At oral argument, Moe's counsel additionally argued that the district court wrongly refused to inform or instruct the jury regarding the death of Moe's father. Although Moe's opening brief referenced the fact that the jury was ignorant of the death of Moe's father, he made no legal argument on this point. Accordingly, that issue has been waived, and we will not consider it here. See Milligan v. City of Red Oak, 230 F.3d 355, 360 (8th Cir. 2000).

-2-

the robbery on Tuesday, but got cold feet. He and Moe discussed their plans again that night and agreed that Rieniets would rob the credit union the next day. On Wednesday, January 24, 2007, Rieniets took the snowmobile, drove the thirteen miles to Ray, and robbed the credit union. He used Moe's .25 caliber handgun during the robbery. After collecting several thousand dollars in cold, hard cash (which included several bait bills), Rieniets left the credit union and returned to Tioga via a circuitous route. Later that evening, Rieniets returned the snowmobile to Moe. Rieniets returned the handgun and gave Moe approximately $2,100 the next day.

The FBI and other law enforcement officers were able to track the snowmobile from Ray to Moe's icehouse in Tioga. Based on evidence gathered in the icehouse, the law enforcement officers obtained a search warrant for Moe's residence where they discovered the handgun as well as several bait bills from the credit union included in a wad of several hundred dollars in cash. During the search, Mrs. Moe turned over $1,300 more in cash (which also included several bait bills) to the officers. The officers then located and arrested Moe. In a subsequent interview, Moe identified Rieniets as the robber and explained their plan.

The officers then secured a search warrant for Rieniets's residence. During the search, the officers discovered clothing that matched the description of clothing worn by the robber as well as a stash of cash that included several bait bills. At that point, Rieniets also confessed his role in the robbery and indicated that it had been Moe's idea to use the handgun and the snowmobile.

The grand jury returned a two-count Indictment against Moe, charging him with aiding and abetting a robbery in violation of 18 U.S.C. §§ 2 and 2113(a), as well as aiding and abetting the use of a firearm during a crime of

violence in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A). Shortly before the initial trial date, Moe secured new trial counsel, and the district court granted a continuance. On the day the continued trial was to begin, Moe's counsel and the Assistant U.S. Attorney ("AUSA") met with the district court judge outside of Moe's presence to discuss jury instructions and other procedural matters. During this meeting, the AUSA informed the district court that Moe's father had passed away just two days previously. Moe's counsel informed the judge that he knew of the death, but that Moe had not requested a continuance.

After this meeting adjourned, Moe met with his counsel and requested a continuance. Thus, Moe's counsel, the AUSA, and the district court judge met once again outside Moe's presence to discuss the continuance. The district court heard from both parties and then denied the request for a continuance. After a three-day trial, the jury convicted Moe on both counts of the Indictment. Moe then filed a timely notice of appeal.

## II.

Moe asserts that the district court wrongly conducted the two proceedings regarding the continuance outside of his presence. In response, the government contends that Moe's absence did not violate his constitutional rights because the proceedings in question dealt only with legal questions. Although the Due Process Clause of the Fifth Amendment guarantees that a defendant must be present at every stage of his trial, the right is not absolute, and Rule 43 of the Federal Rules of Criminal Procedure contains an explicit exception for proceedings that deal exclusively with legal questions. Because the record indicates that the proceedings at issue in the instant case dealt solely with the legal question of whether the court should grant a continuance, Moe's absence during those proceedings did not violate his Fifth Amendment rights.

-4-

**A.**

We review whether a district court proceeding violated a defendant's right to be present under an abuse-of-discretion standard. See United States v. Barth, 424 F.3d 752, 762 (8th Cir. 2005). In this case, however, neither Moe nor his counsel objected to his absence. Thus, we must analyze this issue using plain-error review. See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005). The four-step review of plain-error analysis is familiar. To prevail, a defendant must demonstrate "(1) error, (2) that is plain, and (3) that affects substantial rights." Id. at 550. If the defendant successfully demonstrates these three factors, the fourth factor dictates that we may correct the district court's misstep only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."[3] Id.

**B.**

The Due Process Clause of the Fifth Amendment guarantees a defendant the right to be present at any proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." United States v. Gagnon, 470 U.S. 522, 526 (1985) (internal quotation marks omitted) (quoting Snyder v. Massachusetts, 291 U.S. 97, 105–06 (1934)). The Gagnon Court also explained, however, that this right does not guarantee absolute access to all proceedings: "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id. (quoting Snyder, 291 U.S. at 107-08).

---

[3] The government suggests our review should layer the harmless-error analysis that typically applies to an objection regarding the defendant's absence on top of plain-error analysis. While harmless-error review typically applies to our review of a defendant's absence, see Barth, 424 F.3d at 762, we need not untangle how to implement the government's suggestion because Moe fails to satisfy the four steps of plain-error review.

Rule 43 of the Federal Rules of Criminal Procedure codifies this limited constitutional right.[4]  Barth, 424 F.3d at 762.  Rule 43(b) then identifies specific circumstances when a defendant does not need to be present.  Rule 43(b)(3) provides that "[a] defendant need not be present [when] . . . [t]he proceeding involves only a conference or hearing on a question of law."  Fed. R. Crim. P. 43(b)(3).  We have held that this provision dictates that a defendant need not be present at a pretrial conference where the court and counsel discuss only trial procedures.  See Barth, 424 F.3d at 762–63 ("Appellants' argument fails because the conference only concerned how to conduct the trial in an orderly manner. It did not involve a discussion of questions of fact.").  Our sister circuits have similarly held that the Rule 43(b)(3) exception applies to proceedings regarding jury instructions, United States v. Rivera, 22 F.3d 430, 438–39 (2d Cir. 1994), and continuances, United States v. Bowe, 221 F.3d 1183, 1189 (11th Cir. 2000); United States v. Killian, 639 F.2d 206, 209–10 (5th Cir. Unit A Mar. 1981).  These decisions reflect an understanding that the Rule 43(b)(3) exception hinges on whether the defendant's absence would impact his "opportunity to defend against the charge."  Gagnon, 470 U.S. at 526 (quoting Snyder, 291 U.S. at 105-06).

If the proceeding at issue addresses or involves factual questions, it is possible that the defendant's absence would thwart a "fair and just hearing." Id. (quoting Snyder, 291 U.S. at 108).  By contrast, if the proceeding involves

---

[4] Rule 43(a) states, in relevant part:

Unless this rule, Rule 5, or Rule 10 provides otherwise, the defendant must be present at:
(1) the initial appearance, the initial arraignment, and the plea;
(2) every trial stage, including jury impanelment and the return of the verdict; and
(3) sentencing.

Fed. R. Crim. P. 43(a).

only legal questions, the defendant's absence would not impact his defense because it is likely he would not contribute any expertise on such matters. See Kentucky v. Stincer, 482 U.S. 730, 745 (1987) ("[The defendant's] privilege of presence is not guaranteed when presence would be useless, or the benefit but a shadow." (internal quotation marks omitted) (quoting Snyder, 291 U.S. at 106–07)). In addition, courts have held that a defendant's absence is not constitutionally problematic where the legal issue hinges on few facts that are known to the court. Bowe, 221 F.3d at 1189 ("In particular, hearings [with the defendant] are unnecessary when there is no dispute about the facts underlying the request for a continuance.").

Turning to the case at bar, it is apparent that the two continuance proceedings fall within the Rule 43(b)(3) exception. Similar to this court's decision in Barth, the record indicates that the proceedings at issue here did not address a matter over which there was a factual dispute. See Barth, 424 F.3d at 762. The request for a continuance depended solely on the fact of Moe's father's death, which was well known to the court. Moe did not present any proffer, affidavit, or other evidence to the district court or to us on appeal establishing any unusual ramifications or effects of his father's death that would enhance his request for a continuance. On the record before us, we have only the unadorned fact that his father had recently passed away and that fact was known and uncontested at the hearing for the continuance.

Further, here the defendant did not request to be present at the continuance hearing. Had either Moe or his attorney believed that Moe's presence would have been useful, they could have made known that fact. Because they did not ever raise this issue with the district court, our review is for plain error. We conclude there was not plain error when the district court conducted those proceedings in Moe's absence.

## III.

Moe also asserts that the district court abused its discretion by denying his request for a continuance. We disagree. Although there are factors that point both in favor and against granting a continuance, no factor strongly indicates that a continuance was warranted. Accordingly, the district court did not abuse its discretion by denying the continuance.

## A.

We review a district court's decision to deny a request for a continuance for an abuse of discretion. See, e.g., United States v. Yockel, 320 F.3d 818, 827 (8th Cir. 2003). We will reverse a district court's denial of a defendant's request for a continuance only if the district court abused its discretion and its decision prejudiced the defendant. Id.

## B.

In general, we disfavor requests for a continuance and recognize that "[d]istrict courts are afforded broad discretion when ruling on requests for continuances." United States v. Vesey, 330 F.3d 1070, 1072 (8th Cir. 2003) (quotation marks omitted) (quoting United States v. Allen, 247 F.3d 741, 771 (8th Cir. 2001)). We consider five factors to determine whether the circumstances warranted a continuance:

> (1) the nature of the case and whether the parties have been allowed adequate timing for trial preparation; (2) the diligence of the party requesting the continuance; (3) the conduct of the opposing party and whether a lack of cooperation has contributed to the need for a continuance; (4) the effect of the continuance and whether a delay will seriously disadvantage either party; and (5) the asserted need for the continuance, with weight to be given to sudden exigencies and unforeseen circumstances.

Yockel, 320 F.3d at 827 (quoting United States v. Issaghoolian, 42 F.3d 1175, 1177-79 (8th Cir. 1994)).

In the instant case, the first and fourth factors militate against Moe's request for a continuance. First, it is undisputed that the parties had sufficient time to be well prepared and that the court had previously granted a continuance to allow Moe's substituted trial counsel sufficient time to become familiar with the case. Thus, the first factor supports the district court's denial of Moe's motion.

Second, the record also indicates that the government would have been disadvantaged by a continuance. The motion for the continuance occurred on the day trial was to begin, and the government had assembled witnesses from out of town. In addition, one of the government's key witnesses, Rieniets, was set to be sentenced for his role in the underlying robbery the week after the trial. Ultimately, however, this fourth factor offers only mild support for the court's decision because, while the government would have been inconvenienced, the record does not indicate that the government would have been "seriously disadvantaged." See Yockel, 320 F.3d at 827 ("[W]hile the government might have faced scheduling concerns, it does not appear [that] the government would have been *seriously* disadvantaged by a continuance.").

On the other hand, the last factor mildly militates in the opposite direction. This court has held that a continuance is warranted where an untimely tragedy affects a defendant's ability to present a defense. See United States v. Pruett, 788 F.2d 1395, 1397–98 (8th Cir. 1986) (holding that the district court abused its discretion by refusing to grant a continuance due to the fact that one of the defendant's key witnesses could not appear at trial because of the untimely death of the witness's father). Unlike Pruett,

however, nothing in the record demonstrates that the death of Moe's father affected Moe's ability to assist in his defense.[5]

Accordingly, we are left with two factors that mildly militate against a continuance, and one factor that slightly favors a continuance. Because no single factor is dispositive or even particularly weighty in the instant case, we cannot conclude that the district court abused its discretion by denying the request for a continuance. The death of Moe's father was undoubtedly difficult for the defendant, but the record before us does not demonstrate that it negatively affected Moe's defense, and therefore we affirm the district court's decision to deny the motion for a continuance as a valid exercise of its discretion.

## IV.

Moe asserts that there was insufficient evidence to support the jury's guilty verdict on both counts presented at trial. After viewing all the evidence the government presented in the light most favorable to the verdicts, it is clear that the evidence presented supports the guilty verdicts. Accordingly, we affirm his conviction on both counts of the Indictment.

## A.

The standard of review for a sufficiency of the evidence challenge is well established. We review de novo whether the evidence presented at trial

---

[5] The second factor also slightly tilts in favor of a denying the continuance. Moe's father had passed away two day earlier, and yet Moe did not advise the district court of that fact until the U.S. Attorney's office brought that matter to the court's attention on the day the trial began. This was not particularly diligent by Moe. However, this two-day period partially included the weekend, so we are disinclined to give this factor much weight on either side.

-10-

was sufficient to prove that the accused was guilty beyond a reasonable doubt. United States v. Spears, 454 F.3d 830, 832 (8th Cir. 2006). To conduct this review, we view all the evidence in the light most favorable to the verdict. Id. In addition, we will not re-weigh the evidence and will resolve all credibility issues in favor of the verdict. Id. With all this in mind, "[w]e will reverse only if no reasonable jury could have found the accused guilty beyond a reasonable doubt." United States v. Two Eagle, 318 F.3d 785, 790 (8th Cir. 2003).

**B.**

The first count of the Superceding Indictment charged Moe with aiding and abetting a robbery in violation of 18 U.S.C. §§ 2 and 2113(a). The second count of the Superceding Indictment charged Moe with aiding and abetting the use of a firearm during a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A). To carry its burden of proof, the government had to demonstrate that Rieniets used a firearm to rob the credit union and that Moe aided and abetted both the robbery and the use of the firearm. To prove Rieniets violated the robbery statute, the government was required to prove the following elements: (1) Rieniets took, or attempted to take, (2) by force and violence, or by intimidation, (3) money or any other thing of value belonging to a state or federally chartered credit union, (4) from the person or presence of another. Id. § 2113(a). To prove Rieniets used a firearm in violation of § 924(c)(1)(A), the government had to prove the following elements: (1) that Rieniets used or carried a firearm, (2) during or in relation to a crime of violence. Id. § 924(c)(1)(A). To prove that Moe aided or abetted both crimes, the government was required to prove that Moe "associated himself with the criminal enterprise, that he wanted it to succeed, and that he took actions to help it succeed." United States v. Robertson, 519 F.3d 452, 455 (8th Cir. 2008); see also 18 U.S.C. § 2.

-11-

The government relied heavily on Rieniets's testimony to prove Moe's guilt.[6] Rieniets testified that he and Moe discussed the robbery and formulated a plan for its execution. Rieniets also testified that Moe provided him with the handgun and the snowmobile for use during the robbery. Finally, Rieniets testified that he robbed the credit union using the gun and snowmobile that Moe lent him. This testimony unequivocally establishes the elements required to support the jury's verdict on both counts of the Indictment. Accordingly, we affirm Moe's convictions on both of those counts.

## V.

For the reasons stated above, we conclude that the district court did not err when it addressed and denied the requested continuance outside of Moe's presence. In addition, we conclude that the evidence presented supported the two guilty verdicts. Therefore, we AFFIRM.

_____

[6] We may consider an accomplice's uncorroborated testimony during our sufficiency of the evidence analysis. See United States v. Bounmy, 403 F.3d 1018, 1021 (8th Cir. 2005) ("[T]he uncorroborated testimony of an accomplice is sufficient to sustain a conviction if it is not otherwise incredible or unsubstantial on its face." (quotation marks omitted) (quoting United States v. Crenshaw, 359 F.3d 977, 988–89 (8th Cir. 2004)). Here, Moe raises no argument against Rieniets's testimony, and based on our review of the record, we conclude that Rieniets' testimony was neither unsubstantial nor incredible. Therefore, we may consider that testimony in our analysis.