The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Edward SANDOVAL, Defendant–Appellee.

No. 09SA117.

Supreme Court of Colorado,
En Banc.

Oct. 13, 2009.

Kenneth R. Buck, District Attorney, Nineteenth Judicial District, Anthony J. Perea, Deputy District Attorney, Greeley, CO, for Plaintiff–Appellant.

Dennis W. Hartley, P.C., Dennis W. Hartley, Colorado Springs, CO, for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

In this interlocutory appeal taken pursuant to C.A.R. 4.1, we review an order from the Weld County District Court suppressing statements the defendant made in response to police interrogation. We find that the trial court properly suppressed the defendant's statements because the defendant was in custody while interrogated, and he did not receive Miranda warnings before that custodial interrogation. We therefore affirm the trial court's suppression order and remand for further proceedings.

## I. Facts and Procedural History

On October 22, 2008, Detective Matthew Walsh of the Greeley Police Department was dispatched to the North Colorado Medical Center to investigate a four-month-old child with severe head injuries. Detective Walsh arrived at the hospital at approximately 3:15

a.m. and briefly spoke with Dr. Campain regarding the child's injuries. Dr. Campain informed Detective Walsh that the child, Nevaeh Sandoval, was suffering from brain injuries and retinal hemorrhaging—injuries that are consistent with a violent shaking. The doctors were preparing to transport Nevaeh via helicopter to the Children's Hospital in Denver for further treatment.

Detective Walsh met with Nevaeh's parents, Catrina and Edward Sandoval, inside a trauma room in the hospital. Edward Sandoval ("Sandoval") informed Detective Walsh that he had been home alone with Nevaeh while Catrina was working, and that he brought Nevaeh to the emergency room when it appeared she was having trouble breathing. Sandoval apparently had offered no explanation for Nevaeh's injuries to the emergency room doctors.[1] Detective Walsh suspected that Sandoval was responsible for the child's injuries and asked him multiple times if he was willing to answer some questions at the Greeley police station. Sandoval responded that he wanted to go to the Children's Hospital to be with his daughter. At this point, Detective Walsh initiated the following exchange:

> Walsh: Well, um, you have a ride waiting, right? And I know you would both like to go so I'll just ask you one last time: are you going to be willing to come in now and talk with me at the police station?
>
> . . .
>
> Walsh: I've told [Edward Sandoval] I want to do it now.
>
> . . .
>
> Walsh: What do you think, Edward?
>
> . . .
>
> Sandoval: What happens if I say no?
>
> Walsh: Well, um, this is an investigation. We're going to continue the investigation. It will continue. That's what I'm saying. So I need to

know if you're going to come in or, or what.

> Sandoval: I want to be there for my daughter.
>
> Walsh: All right, well, um, we need to do this, we need to talk. *So if you're not going to volunteer to come in, then I'm going to have to bring you in.* At this point . . .
>
> Sandoval: I'll go in.
>
> Walsh: You'll come in?
>
> Sandoval: Yes. *I mean, I guess that's the only choice I have.*
>
> Walsh: Well, if you, if you're saying you don't want to go in and talk to me, then, and you would like to do something else like to go to Denver . . .
>
> Sandoval: I'd like to be with my daughter first.
>
> Walsh: I understand. I understand.
>
> Walsh: Well it's pretty obvious to me that you wouldn't, you're not volunteering to come in.
>
> Sandoval: I'm going to come in. I'm going to come in.
>
> . . .
>
> Walsh: All right, Edward, um, do you feel like you had no option but to come and talk to me?
>
> Sandoval: You know, a little bit yes. But I mean if it's concerning my daughter, I mean, it has to be done.
>
> Walsh: Yeah, it does. It does. Um, its one of those things where, right now is, is the best time to take care of it—before you leave town and you go and check on her. I just, I don't think we have enough information about what happened.
>
> Sandoval: Why I don't want to go is if something happens [sic], am I going to be able to be there for my daughter?
>
> Walsh: I understand. *Well, this needs to be voluntary on your part, and I*

---

1. At some point, Sandoval suggested the injuries may have been caused by an incorrect dose of Tylenol, but it is unclear whether he told this to the treating physicians.

*don't feel like you're one-hundred percent with that, so, um, here's the thing . . .*

Sandoval: *I'm going to do it.  It's one-hundred percent.*

(emphases added).

A uniformed Greeley police officer then drove Sandoval from the hospital to the Greeley police station.  Detective Walsh interrogated Sandoval about Neveah's injuries. After an hour of questioning, Sandoval confessed that he had shaken Neveah out of frustration.  Neveah ultimately died from her injuries.

After confessing, Sandoval was placed under arrest and subsequently charged with child abuse resulting in death under sections 18–6–401(1)(a), (7)(a)(I), C.R.S. (2008).  At a suppression hearing, the trial judge determined that Detective Walsh failed to provide *Miranda* warnings during a custodial interrogation, and therefore Sandoval's confession was inadmissible at trial.  The People appealed.

## II. Analysis

■ A *Miranda* advisement is only required when a suspect is in custody and interrogated.  *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  If the suspect is not advised of his *Miranda* rights, the prosecution may not use against him any statements made during the course of a custodial interrogation.  *Id.* It is undisputed in this case that Sandoval was interrogated.[2]  The issue, rather, is whether Sandoval was in custody during the interrogation.  A trial court's determination of whether a suspect was in custody is a mixed question of law and fact.  *People v. Matheny,* 46 P.3d 453, 462 (Colo.2002).  We defer to the trial court's findings of fact, but we review de novo whether those facts establish that the suspect was in custody during the interrogation.  *Id.*

In deciding whether a suspect is in custody for *Miranda* purposes, we must determine "whether a reasonable person in the suspect's position would believe himself to be deprived of his freedom of action to the degree associated with a formal arrest."  *Id.* at 467;  *see also People v. Stephenson,* 159 P.3d 617, 620 (Colo.2007) ("The touchstone of custody is significant curtailment of the defendant's freedom of action that is equivalent to formal arrest.").  We look at the totality of the circumstances surrounding the interrogation to determine whether the suspect was in custody.  *People v. Dracon,* 884 P.2d 712, 717 (Colo.1994).  We have previously held that the following factors are relevant, but no single factor is determinative:

(1) the time, place, and purpose of the encounter;

(2) the persons present during the interrogation;

(3) the words spoken by the officer to the defendant;

(4) the officer's tone of voice and general demeanor;

(5) the length and mood of the interrogation;

(6) whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation;

(7) the officer's response to any questions asked by the defendant;

(8) whether directions were given to the defendant during the interrogation;  and

(9) the defendant's verbal or nonverbal response to such directions.

*Matheny,* 46 P.3d at 465–66 (quoting *People v. Trujillo,* 938 P.2d 117, 124 (Colo.1997)).

■ Here, Detective Walsh's statements to Sandoval in the hospital and subsequent station-house questioning mandate our determination that Sandoval was in custody for purposes of *Miranda.*  Detective Walsh unequivocally informed Sandoval that if he would not come to the police station voluntarily, he would be forced to go against his

---

**2.** A suspect is interrogated when a police officer uses "any words or actions ... that the officer should know are reasonably likely to elicit an incriminating response from the suspect."  *People v. Hamilton,* 831 P.2d 1326, 1331 (Colo.1992)(internal quotations omitted).  Here, Detective Walsh suspected Sandoval had shaken his baby, and his questions were directed at getting Sandoval to confess.

will. Sandoval understood this as eliminating his choice in the matter, as would any reasonable person in his situation. From that point on, everything Sandoval told Detective Walsh is consistent with his perceived lack of choice. Even though at one point Sandoval stated that it was "one-hundred percent [voluntary]," this must be read in light of Detective Walsh's threat to question him involuntarily. Sandoval knew that regardless of what he said he would be questioned, so naturally he wanted to appear cooperative. Under these circumstances, we do not believe that Sandoval's compliance was in fact voluntary.

We hold that, under the totality of the circumstances, Sandoval was in custody. Detective Walsh gave Sandoval a non-choice: come in or I will bring you in. Sandoval was not given the option of being questioned at some other time and was not told that he could leave, despite his repeated pleas to be with Nevaeh in Denver. In this situation, a reasonable person would feel restrained to a degree associated with a formal arrest. Therefore, we conclude that Sandoval was in custody for *Miranda* purposes.

### III. Conclusion

For the foregoing reasons, we hold that Sandoval was in custody when he was interrogated by Detective Walsh. Because Sandoval was not advised of his *Miranda* rights, the trial court correctly suppressed statements made during the interrogation. We affirm the trial court's suppression order and remand for further proceedings.