The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Andrew Wayne MUMFORD,
Defendant–Appellant.

No. 08CA0974.

Colorado Court of Appeals,
Div. IV.

March 18, 2010.

John W. Suthers, Attorney General, Melissa D. Allen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ryann S. Hardman, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CONNELLY.

Defendant, Andrew Wayne Mumford, was convicted after a jury trial of felony possession of cocaine and was sentenced to probation. His appeal challenges the conviction. We affirm.

## I. Background

The cocaine at issue was found in defendant's home by police executing warrants to arrest defendant's friend and to search the home. The police had told defendant and other occupants of the home to sit outside on the curb during the search.

While defendant was outside the home, a detective asked defendant if he lived there and whether there was anything officers needed to know. Defendant responded that he had a small amount of cocaine inside his bedroom for personal use.

Defendant moved to suppress his statement, contending it was the product of custodial interrogation conducted without the prior warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After an evidentiary hearing, the trial court denied suppression: it concluded defendant had been subjected to interrogation but that *Miranda* warnings were not required because defendant was not then in custody. The People introduced this statement at the trial in which defendant was convicted.

## II. Discussion

### A. Challenges to the Statement

Defendant contends that his statement regarding the cocaine should have been suppressed because it was elicited without *Miranda* warnings and was involuntary. In reviewing these challenges, we defer to the trial court's findings of historical fact but consider de novo its application of the governing legal standards. *People v. Hankins*, 201 P.3d 1215, 1218 (Colo.2009); *People v. Adkins*, 113 P.3d 788, 791 (Colo.2005).

### 1. *Miranda* Challenge

■ The test of custody is an "objective" one asking "whether a reasonable person in the suspect's position would believe himself to be deprived of his freedom of action *to the degree associated with a formal arrest.*" *Hankins*, 201 P.3d at 1218 (emphasis added) (internal quotations omitted). The relevant "question is *not* whether a reasonable person would believe he was not free to leave, but rather whether such a person would believe he was in police custody of the degree associated with a formal arrest." *People v. Polander*, 41 P.3d 698, 705 (Colo.2001) (emphasis in original) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).

■ Not every Fourth Amendment "seizure" constitutes "custody" under *Miranda*. A traffic stop, for example, ordinarily does not constitute custody even though it is "unquestionably a seizure within the meaning of the Fourth Amendment." *Pennsylvania v. Bruder*, 488 U.S. 9, 10–11, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988) (citing *Berkemer*, 468

U.S. at 440, 104 S.Ct. 3138). The "critical" point "is that custody arises only if the restraint on freedom is [of] a certain degree—the degree associated with formal arrest." *United States v. Bengivenga*, 845 F.2d 593, 598 (5th Cir.1988) (en banc).

The Supreme Court just reemphasized this point in *Maryland v. Shatzer*, 559 U.S. ——, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010). The Court wrote that "the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody." Op. at 672. It explained that lack of such freedom has not been accorded " 'talismanic power,' because *Miranda* is to be enforced only in those types of situations in which the concerns that powered the decision are implicated.' " *Id.* (citing *Berkemer*, 468 U.S. at 437, 104 S.Ct. 3138). Thus, "the temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), does not constitute *Miranda* custody." *Shatzer*, at ——.

Here, at the time the detective asked his questions, there is no doubt defendant was being detained temporarily. But there is also no doubt this temporary detention was permissible under the Fourth Amendment: the Supreme Court has permitted such detentions by analogizing to *Terry* stops allowable without the probable cause required for an arrest. *Michigan v. Summers*, 452 U.S. 692, 698–705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (citing *Terry* and its progeny).

*Summers* did not involve a *Miranda* challenge, so the Supreme Court had no need to consider whether warnings are required to question persons temporarily detained during execution of a warrant. The Court did note, however, that "[i]n sharp contrast to [a] custodial interrogation" at a police station, detaining a home occupant during execution of a warrant is " 'substantially less intrusive' than an arrest." *Id.* at 702, 101 S.Ct. 2587 (quoting and distinguishing *Dunaway v. New York*, 442 U.S. 200, 210, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)).

Federal courts have held that a temporary detention during execution of a warrant, like a traffic or *Terry* stop, ordinarily does not constitute *Miranda* custody. The Seventh Circuit explained that "because detentions pursuant to the execution of a search warrant are 'substantially less intrusive than an arrest, ... a suspect who is detained during the execution of a search warrant has not suffered a restraint on freedom of movement of the degree associated with a formal arrest, and therefore is not 'in custody' " for *Miranda* purposes. *United States v. Saadeh*, 61 F.3d 510, 519–20 (7th Cir.1995) (quoting *Summers*, 452 U.S. at 702, 101 S.Ct. 2587, and citing *United States v. Burns*, 37 F.3d 276, 281 (7th Cir.1994)). Similarly, the Ninth Circuit has held that "[w]here an individual has been detained incident to a search warrant, and officers' questioning stays within the bounds of questioning permitted during a *Terry* stop, *Miranda* [warnings] are not required." *United States v. Davis*, 530 F.3d 1069, 1081 (9th Cir.2008) (citing prior case relying on *Berkemer* ).

■ Of course, that the mere fact of temporary detention is legally insufficient by itself to create custody "is not to say ... that *Miranda* rights can never be implicated during a valid investigatory stop." *People v. Breidenbach*, 875 P.2d 879, 886 (Colo.1994). The issue of custody turns on the "totality of the circumstances." *Hankins*, 201 P.3d at 1218. While our supreme court listed several relevant factors in *People v. Matheny*, 46 P.3d 453, 465–66 (Colo.2002), "[n]o single factor is determinative." *Hankins*, 201 P.3d at 1219.

■ There was nothing to elevate the encounter in this case from a temporary detention not requiring *Miranda* warnings to a custodial situation akin to formal arrest. The encounter occurred outside defendant's home, and defendant knew the officers' immediate focus was on another person for whom they had an arrest warrant. The questioning of defendant was brief—the detective asked simply whether defendant lived at the home and whether there was anything officers should know—and the tone was conversational.

Defendant was under no formal restraint at the time of the officer's very brief and nonthreatening questions outside his home. Critically, though defendant testified to the

contrary at the suppression hearing, the trial court specifically found that defendant was not handcuffed when he made the incriminating statement. *Cf. United States v. Newton,* 369 F.3d 659, 673–77 (2d Cir.2004) (concluding that handcuffing suspect was the critical factor elevating temporary detention during execution of warrant to *Miranda* custody of the type normally associated with formal arrest).

Defendant relies on the fact that some officers had their guns drawn when they first entered the home. But the guns were put away once the home was cleared, and the detective made no display of force when later questioning defendant outside. Thus, our case is easily distinguished from those holding that defendants "questioned by an officer at gunpoint" were in custody for *Miranda* purposes. *Breidenbach,* 875 P.2d at 886–87 (emphasizing that officer continued to interrogate defendant "[w]ithout reholstering his weapon," even though immediate danger had passed). Rather, it is more analogous to *United States v. Bennett,* 329 F.3d 769, 773–75 (10th Cir.2003). *Bennett* held that *Miranda* warnings were not required for a defendant detained during execution of a warrant, even though firearms had been displayed and the defendant had been handcuffed prior to questioning; the Tenth Circuit distinguished a prior case in which police had used "firearms to restrain [a suspect] *during* questioning." *Id.* at 775 (emphasis in original).

Defendant relies on the supreme court's decisions in *Polander,* 41 P.3d at 705, and *People v. Moore,* 900 P.2d 66 (Colo.1995). We conclude those cases are distinguishable from this one.

The critical fact in *Polander* was that at the time the defendant was questioned, "it was apparent to all that the police had grounds to arrest" her and the other occupants of a vehicle in which drugs had been found. 41 P.3d at 705. The supreme court concluded that "the defendant's freedom of action was curtailed to a degree associated with formal arrest" because "[w]hether or not the police had announced that her seizure was elevated ... from an investigatory stop to an arrest, it is clear that [she] had every

reason to believe she would not be briefly detained and then released as in the case of an investigatory stop or a stop for a minor offense." *Id.* Here, in contrast, at the time of the detective's brief questioning, there was nothing to indicate that defendant ultimately was going to be arrested rather than simply detained temporarily during a search focused primarily on someone else. Indeed, defendant testified that he had watched police allow another occupant of the house to leave the area after answering a few questions.

*Moore* likewise is distinguishable. Defendant Moore was a passenger in a car stopped in his apartment's parking lot—while other officers were conducting a warranted search of his apartment. 900 P.2d at 68. An officer "escorted" Moore back to the apartment, and three officers pointed their guns at Moore until learning the officer was with him. *Id.* at 72. Moore remained in the apartment during the search, though he was told he could leave. *Id.* Meanwhile, back at the vehicle, an officer had found suspected cocaine inside a wallet with Moore's driver's license. *Id.* at 68. The wallet was brought to the apartment, where an officer asked Moore what was inside; Moore responded, " 'three eight-balls.' " *Id.* at 72. Based on the "totality of the facts," the supreme court affirmed a ruling that Moore was in custody during this questioning. *Id.* at 73.

Thus, by the time Moore was asked the pointed question that led to his incriminating answer, officers already had stopped the car in which he was a passenger, escorted him back to his apartment, pointed guns directly at him, and seized his wallet containing suspected cocaine. Here, in contrast, nothing in the detective's words or actions directed toward defendant would have suggested anything other than a temporary detention. Unlike in *Moore,* defendant was asked open-ended questions, the search was focused on someone else, and there was nothing to suggest defendant was going to be arrested; indeed, the inquiring detective did not even know who defendant was or how he was connected to the house.

We accordingly conclude defendant was not in custody at the time of the detective's brief questioning. The trial court correctly

ruled that *Miranda* warnings were not required.

### 2. Voluntariness Challenge

■ Defendant also contends that his incriminating statement was made involuntarily. The trial court did not specifically address this contention, but the parties agree we can resolve it because the court made sufficient factual findings and voluntariness ultimately is reviewed de novo on appeal in any event. *See Adkins*, 113 P.3d at 791.

■ An involuntary confession claim cannot be sustained absent some "police overreaching" or "coercive police conduct." *Colorado v. Connelly*, 479 U.S. 157, 163–64, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Courts must consider the "totality of the circumstances" to determine "whether the individual's will [was] overborne." *People v. Miranda–Olivas*, 41 P.3d 658, 661 (Colo.2001).

Defendant's voluntariness challenge fails because there was no police overreaching or coercion that could have overborne his will. As set forth above, the detective's tone was conversational, and his brief questioning outside defendant's own home was not accusatory. We conclude that defendant's incriminating statement was made voluntarily and that the jury was properly allowed to consider it.

### B. Challenge to Trial Juror

■ Defendant contends the court erred in addressing his trial counsel's belated concerns about a seated juror. Trial counsel first noted a concern after the jury had been sworn and the parties had agreed to release the only alternate juror. Counsel stated that the juror's written response indicated he had once volunteered for the probation department, but counsel inadvertently had not questioned the juror about this in voir dire. Counsel asked the court either to allow further questioning or to declare a mistrial. The court denied both requests and proceeded to trial.

Defendant "waived" any challenge to the juror by not raising any objection until after the jury was sworn. *See* Crim. P. 24(b)(2) (providing with an exception discussed below that "[a]ll matters pertaining to the qualifications and competency of the prospective jurors shall be deemed waived by the parties if not raised prior to the swearing in of the jury to try the case"); *People v. Asberry*, 172 P.3d 927, 930 (Colo.App.2007) (discussing Rule 24(a)(2) and similar provision in § 16–10–103(3), C.R.S.2009). Even if the challenge was only "forfeited" rather than "waived," *see United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (distinguishing between the two), such that plain error review would be available under Crim. P. 52(b), nothing in the juror's written or oral responses would have made his alleged bias plainly apparent.

Defendant relies on the rule's exception, providing that a trial "court for good cause shown or upon a motion for mistrial or other relief may hear such evidence [pertaining to sworn jurors] during the trial out of the presence of the jury." Crim. P. 24(b)(2). But, as shown by the rule's use of the term "may" and its reference to "good cause," whether to allow further questioning is discretionary with the trial court. *Cf. People v. Triantos*, 55 P.3d 131, 134 (Colo.2002) ("use of the term 'may' is indicative of a grant of discretion or choice among alternatives"); *People v. Grant*, 174 P.3d 798, 803 (Colo.App. 2007) ("determination of whether good cause has been shown is a matter committed to the discretion of the trial court"). Trial courts are also entrusted with discretion to decide whether the drastic remedy of a mistrial is warranted. *People v. Tillery*, 231 P.3d 36, 43 (Colo.App. 2009). Here, the trial court was well within its discretion to conclude that defense counsel's concerns were too late and too little to justify either further questioning or a mistrial.

### C. Challenge to Mid–Trial Conference

■ Defendant finally contends that he was improperly "excluded" from a mid-trial conference. In that conference, counsel and the court discussed an evidentiary issue and two instructional issues.

In fact, defendant was never "excluded" from the conference. At the outset, the court inquired whether defense counsel was "waiving [his] client's presence." Defense counsel responded, "Yes, Your Honor. I

don't believe this is an essential stage of the trial."

■ Defendant now seeks plain error review. But such review generally is available only for claims that have been inadvertently "forfeited" rather than affirmatively "waived." *See Olano,* 507 U.S. at 733, 113 S.Ct. 1770. Defendant contends, however, that only he personally and not counsel could waive a right to be present. This relies on dicta in *People v. Curtis,* 681 P.2d 504, 511 (Colo.1984) (citing dicta from *Penney v. People,* 146 Colo. 95, 360 P.2d 671 (1961)), but several courts have held that counsel may validly waive a defendant's right to be present at a hearing. *Clark v. Stinson,* 214 F.3d 315 (2d Cir.2000); *United States v. Shukitis,* 877 F.2d 1322, 1330 (7th Cir.1989); *United States v. Gunter,* 631 F.2d 583, 589 (8th Cir.1980); *contra State v. Matt,* 347 Mont. 530, 199 P.3d 244, 251 (2008).

■ We will assume that defendant is entitled to plain error review because his claim was merely forfeited and not validly waived. To obtain relief on plain error review, a defendant must show that the trial court committed an "obvious" error that affected his substantial rights and "so undermined the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller,* 113 P.3d 743, 750 (Colo. 2005) (quoting *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003)).

We are not convinced it was error, much less obvious error, to conduct the conference with only counsel present. A defendant need not be present "[a]t a conference or argument upon a question of law." Crim. P. 43(c)(2). Courts interpreting an analogous federal rule, Fed.R.Crim.P. 43(b)(3), have concluded that conferences on jury instructions or evidentiary rulings involve legal issues for which a defendant need not be present. *See, e.g., United States v. Moe,* 536 F.3d 825, 830 (8th Cir.2008) (citing *United States v. Rivera,* 22 F.3d 430, 438–39 (2d Cir.1994)); *United States v. Vasquez,* 732 F.2d 846, 848–49 (11th Cir.1984). Nor did the Constitution require defendant's presence: "if the proceeding involves only legal questions, the defendant's absence would not impact his defense because it is likely he would not contribute any expertise on such matters." *Moe,* 536 F.3d at 830; *see generally Luu v. People,* 841 P.2d 271, 275 (Colo. 1992) ("Due process only 'requires that a defendant be allowed to be present to the extent that a fair and just hearing would be thwarted by his absence.'") (quoting *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987), and a prior case, and citing *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985)).

In any event, defendant cannot show that his absence from the conference affected his substantial rights and undermined the trial's fundamental fairness. Colorado cases have found the erroneous exclusion of a criminal defendant from parts of a trial or hearings to be harmless beyond a reasonable doubt. *See Luu,* 841 P.2d at 275; *People v. Harris,* 914 P.2d 434, 437 (Colo.App.1995). Here, defendant's absence from a conference on evidentiary and instructional issues had no effect on the trial's fairness or outcome.

### III. Conclusion

The judgment is affirmed.

Judge TERRY concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

In my view, a reasonable person in defendant's position would have considered himself in police custody of the degree more commonly associated with a formal arrest than with a brief investigatory detention when the detective questioned defendant. Hence, I respectfully dissent. As a consequence of the detective's failure to give a *Miranda* advisement before questioning defendant, I would hold that his inculpatory statement to the detective concerning ownership of cocaine in his home, which was repeated to the jury, should have been suppressed. Therefore, defendant is entitled to a new trial. I express no opinion whether the cocaine that the detective found in the home after defendant described its location should be suppressed as fruit of the poisonous tree, or was

subject to inevitable discovery given the warrant to search defendant's home.

Custody must be determined by the "totality of the circumstances." *People v. Hankins,* 201 P.3d 1215, 1218 (Colo.2009). Our supreme court has listed relevant factors in cases such as *People v. Matheny,* 46 P.3d 453, 465–66 (Colo.2002). But "[n]o single factor is determinative." *Hankins,* 201 P.3d at 1219. While an appellate court defers to the trial court's findings of historical fact, it reviews the ultimate constitutional question de novo. *Id.* at 1218.

The following factors, here either found by the trial court or established by testimony of police officers at the suppression hearing, have been recognized by our supreme court as leading a reasonable person to consider himself in custody. *See, e.g., People v. Polander,* 41 P.3d 698, 705 (Colo.2001); *People v. Taylor,* 41 P.3d 681, 693 (Colo.2002). When defendant encountered police officers at the door to his home:

- At least one of the officers had his weapon drawn
- After the officers entered, they handcuffed two other people in the home
- Defendant was patted down
- An officer told defendant he was not free to leave
- Another officer then directed him to a curb in front of the home
- One or two officers were nearby the curb
- At least six officers were at the scene
- An officer took defendant's identification and did not return it
- Before questioning defendant, the detective told him that "if he cooperated things would go well for him."

Initially, these circumstances distinguish cases such as *Hankins,* 201 P.3d at 1217, where the defendant invited the police to his home to talk, he voluntarily led them to and from the burial site of the victim, and, in the months leading up to the confession, "[the defendant] and the local police grew familiar with each other." *See also Matheny,* 46 P.3d at 467 (emphasizing that the defendant voluntarily drove himself to the police station).

The majority notes the following factors, also supported in the record, from the findings, and by controlling precedent, that would lead to the opposite conclusion:

- The officers' weapons were out for a relatively brief time
- Defendant was not handcuffed when the detective questioned him
- The questions were brief and asked in a conversational tone
- Defendant was not subject to a lengthy hold at the curb
- When questioned, he was not surrounded by officers.

Nevertheless, the circumstances are comparable to those in *People v. Moore,* 900 P.2d 66, 73 (Colo.1995), where the defendant was held to have been in custody. Upon being escorted to his nearby apartment following a traffic stop of a car in which he had been a passenger, the defendant encountered officers executing a search warrant. They drew their weapons briefly when he entered. However, a detective told him that he was not in custody, but to sit on a couch if he stayed. He remained and was never handcuffed. Twenty or thirty minutes later, a detective showed him his wallet, which had been found in the car and contained illegal drugs. Because no *Miranda* warning was given, the court held that his response to a question about the wallet should have been suppressed. *Id.* at 72–73.

Further, even if the remaining mix of factors still presents a close case, I would resolve the custody question in defendant's favor because, as the trial court found, "the defendant did hear some form of assurance" from the detective, which was "what persuaded the defendant to speak at the time."

In *Polander,* 41 P.3d at 705, the defendant "was not confined at the police station, nor did the police draw their guns, use handcuffs, or otherwise demonstrate the kind of force typically associated with an arrest, as distinguished from an investigatory stop." Nevertheless, the court upheld suppression of an admission to ownership of drugs found by police in a vehicle that defendant had just exited, explaining that "it was apparent to all

that the police had grounds to arrest" the defendant, adding:

> Whether or not the police had announced that her seizure was elevated in their minds from an investigatory stop to an arrest, *it is clear that the defendant had every reason to believe she would not be briefly detained and then released as in the case of an investigatory stop or a stop for a minor offense.* Under these circumstances the defendant's freedom of action was curtailed to a degree associated with formal arrest.

(Emphasis added.)

Likewise here, unless the police "had grounds to arrest," the detective lacked any legitimate basis for offering defendant "some form of reassurance ... consistent with what the defendant testified," i.e., "if he cooperated things would go well for him." Thus, from this statement a reasonable person would infer that he was in custody. *See State v. Coen,* 203 Or.App. 92, 125 P.3d 761, 767 (2005) ("[A]t the point where the trooper told defendant he would be arrested if he did not cooperate without the benefit of a lawyer's advice—the nature of the questioning created an environment in which a reasonable person would have felt compelled to answer the trooper's questions."); *cf. United States v. Czichray,* 378 F.3d 822, 833 (8th Cir.2004) (Arnold, J., dissenting) (insinuation that agents would investigate suspect's elderly father if he did not cooperate supported inference that he was in custody, under the "whether agents used strong-arm tactics or deceptive stratagems" factor of *United States v. Griffin,* 922 F.2d 1343, 1349 (8th Cir.1990)).

Even if the detective did not intend to arrest defendant when he prefaced the questioning by offering "some form of reassurance," the prosecution must be bound by the conclusion that a reasonable person would have drawn from the detective's offer. *See People v. Sandoval,* 218 P.3d 307, 309–10 (Colo.2009) (reasonable person "would feel restrained to a degree associated with formal arrest" because while questioning the defendant at a hospital, police told him that if he did not come voluntarily to the police station, he would be brought there involuntarily).

Accordingly, I would reverse.